**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| EDWARD SWEAT and MARIE GARZA SWEAT, individually and on behalf of a class of similarly situated individuals, | § § § § § | |
| Plaintiffs, | § | Civil Action No. 24-CV-775 |
| v. | § § | |
| HOUSTON METHODIST HOSPITAL, | § § | |
| Defendant. | § | Assigned to: Hon. David Hittner |

**DEFENDANT'S MOTION TO DISMISS**

R. Paul Yetter
Federal Bar No. 3639
State Bar No. 22154200
pyetter@yettercoleman.com
Tracy LeRoy
Federal Bar No. 860752
State Bar No. 24062847
tleroy@yettercoleman.com
Mary E. Bracewell
Federal Bar No. 3874146
State Bar No. 24139388
mbracewell@yettercoleman.com
YETTER COLEMAN LLP
811 Main St., Suite 4100
Houston, Texas 77002
(713) 632-8000

ATTORNEYS FOR DEFENDANT
THE METHODIST HOSPITAL

March 11, 2024

## TABLE OF CONTENTS


STATEMENT OF ISSUES ....................1

FACTUAL BACKGROUND ....................2

I. The Parties ....................2

II. The Disputed Software Applications ....................3

LEGAL STANDARD ....................5

ARGUMENT AND AUTHORITIES ....................6

I. Plaintiffs Do Not Adequately Allege an Invasion of Privacy Tort. ....................6

A. Virtual "intrusion" is not sufficient. ....................7

B. Plaintiffs have not adequately pleaded that any intrusion was intentional. ....................8

C. Plaintiffs do not allege an intrusion highly offensive to a reasonable person. ....................9

D. These sorts of claims are routinely dismissed. ....................11

II. The ECPA Claim Fails Because Plaintiffs Do Not Allege an "Interception." ....................12

III. Plaintiffs Do Not Adequately Allege Breach of An Implied Contract. ....................15

IV. Plaintiffs' Unjust Enrichment Claim Fails. ....................18

CONCLUSION ....................19

## TABLE OF AUTHORITIES

**Cases** Page(s)

*Applin v. Deutsche Bk. Nat. Trust*,
2014 WL 1024006 (S.D. Tex. 2014)....19

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....5

*Ball v. United Parcel Serv., Inc.*,
2011 WL 1642148 (S.D. Tex. Apr. 29, 2011)....9

*Banik v. Tamez*,
2017 WL 11713725 (S.D. Tex. Sept. 20, 2017)....10

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....5

*Cherkaoui v. Santander Consumer USA, Inc.*,
32 F. Supp. 3d 811 (S.D. Tex. 2014)....9, 10

*Cunningham v. Mark D. Guidubaldi & Assocs., LLC*,
2019 WL 1119365 (E.D. Tex. Jan. 11, 2019), *report & rec. adopted*, 2019 WL 1117915 (E.D. Tex. March 11, 2019)....8

*Doe v. United States*,
83 F. Supp. 2d 833 (S.D. Tex. 2000)....7

*Electrostim Med. Servs., Inc. v. Health Care Serv. Corp.*,
614 F. App'x 731 (5th Cir. 2015)....5, 15

*Goss v. Bonner*,
2020 WL 1479131 (D. Ariz. March 6, 2020)....13, 14

*Graham v. JPMorgan Chase Bk., Nat. Ass'n*,
2015 WL 4431199 (S.D. Tex. July 17, 2015)....7

*Hartley v. Univ. of Chicago Med. Ctr.*,
2023 WL 7386060 (N.D. Ill. Nov. 8, 2023)....11, 14

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
806 F.3d 125 (3d Cir. 2015) ....................................................................13

*In re Vistaprint Corp Mktg. & Sales Pracs. Litig.*,
2009 WL 2884727 (S.D. Tex. Aug. 31, 2009), *aff'd sub nom. Bott v. Vistaprint USA Inc.*, 392 F. App'x 327 (5th Cir. 2010) .........................................................13

*Jeanty v. TXFM, Inc.*,
2020 WL 6483376 (E.D. Tex. Aug. 18, 2020), *report & rec. adopted*, 2020 WL 5797825 (E.D. Tex. Sept. 29, 2020)........................................................ 12, 13

*Juan Antonio Sanchez, PC v. Bank of S. Tex.*,
494 F. Supp. 3d 421 (S.D. Tex. 2020)..........................................................18

*Jupiter Enters., Inc v. Harrison*,
2002 WL 318305 (Tex. App.—Dallas 2002, no pet.)................................. 18, 19

*Keane v. Fox Television Stations, Inc.*,
297 F. Supp. 2d 921 (S.D. Tex. 2004), *aff'd* 129 F. App'x 874 (5th Cir. 2005) ........................................................................................................ 17, 18

*Kurowski v. Rush Sys. for Health*,
659 F.Supp.3d 931 (N.D. Ill. 2023)..............................................................14

*Lone Star Fund V (U.S.), L.P. v. Barclays Bk. PLC*,
594 F.3d 383 (5th Cir. 2010) ....................................................................4, 5

*Merisier v. Johnson Cnty., Tex.*,
2021 WL 1711468 (E.D. Tex. Jan. 31, 2021), *report & rec. adopted*, 2021 WL 1709950 (E.D. Tex. Apr. 29, 2021).............................................................13

*Morales v. Barnes*,
2017 WL 6759190 (Tex. App.—Dallas 2017, no pet.)......................................7

*Murphy v. Thomas Jefferson Univ. Hosps., Inc.*,
2023 WL 7017734 (E.D. Pa. Oct. 10, 2023).............................................. 11, 14

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
402 F. Supp. 3d 615 (N.D. Cal. 2019)..........................................................14

*Plotkin v. Joekel*,
304 S.W.3d 455 (Tex. App.—Houston [1st Dist.] 2009, pet. denied)................15

*Ross v. Midwest Commc'ns, Inc.*,
870 F.2d 271 (5th Cir. 1989)........................................................................6, 7

*Schouest v. Medtronic, Inc.*,
92 F. Supp.3d 606 (S.D. Tex. 2015)...............................................................19

*Summerlin v. Barrow*,
2018 WL 1322172 (N.D. Tex. Mar. 13, 2018) ............................................ 9, 10

*Sussman v. American Broadcasting Cos.*,
186 F.3d 1200 (9th Cir. 1999)................................................................... 12, 13

*Thompson v. City of Arlington, Tex.*,
838 F. Supp. 1137 (N.D. Tex. 1993)..............................................................11

*Thymes v. Gillman Cos.*,
2018 WL 1281852 (S.D. Tex. March 9, 2018) ................................................17

*Torch Liquidating Trust ex rel. Bridge Assocs. L.L.C. v. Stockstill*,
561 F.3d 377 (5th Cir. 2009)............................................................................5

*Trusty v. Walmart Inc.*,
2020 WL 2497733 (S.D. Tex. May 13, 2020) ...................................................6

*Valenzuela v. Aquino*,
853 S.W.2d 512 (Tex. 1993) ........................................................................6, 9

*Walters v. Blue Cross and Blue Shield of Tex., Inc.*,
2022 WL 902735 (N.D. Tex. March 28, 2022).............................................7, 8

*Williams v. Google, LLC*,
2021 WL 3612300 (E.D. Tex. July 16, 2021), *report & rec. adopted*, 2021 WL 3603769 (E.D. Tex. Aug. 13, 2021)..............................................................10

*Wise v. Wilmoth*,
2017 WL 3267924 (N.D. Tex. July 3, 2017) .....................................................7

**Statutes**

18 U.S.C.A. § 2511 .................................................. 12, 13

**Rules**

Fed. R. Civ. P. 12 .................................................. 1, 4

**Other Authorities**

Todd Feathers, "Facebook Is Receiving Sensitive Medical Information from Hospital Websites," The Markup (June 16, 2022), https://themarkup.org/pixel-hunt/2022/06/16/facebook-is-receiving-sensitive-medical-information-from-hospital-websites .................................................. 4

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendant The Methodist Hospital, d/b/a Houston Methodist Hospital ("Houston Methodist") respectfully moves to dismiss plaintiffs' petition in its entirety.

## STATEMENT OF ISSUES

Plaintiffs bring a putative class action alleging that a hospital's use of third-party software on its website violated their privacy by transmitting information to a vendor. As evident by the privacy policy plaintiffs rely upon, patient privacy is a core tenant of Houston Methodist's practice. Their petition lacks sufficient allegations to support a claim for a privacy violation, like basic facts about what data was misused, when it occurred, and whether the hospital was even aware of it. Plaintiffs allege no facts about when or how often they used the websites or what of their personal information was or may have been transmitted. They rely on conclusory and formulaic recitations of their asserted claims, which fail on their face and should be dismissed.

Specifically, plaintiffs' claims should be dismissed for the following reasons: (1) Intrusion Upon Seclusion: Texas courts do not recognize virtual intrusions as alleged here to be actionable invasions of seclusion and, in any event, plaintiffs fail to adequately plead that any alleged intrusion was intentional as required to proceed on this claim; (2) Electronic Communications Privacy Act ("ECPA"): plaintiffs voluntarily provided information to Houston Methodist on its website, meaning that

Houston Methodist was a party to the communication and cannot be liable for any "interception" under the ECPA; (3) Breach of Implied Contract: plaintiffs fail to allege facts showing a meeting of the minds on any of the alleged implicit contract terms; and (4) Unjust Enrichment: Texas law does not recognize an independent claim for unjust enrichment and, even if it did, plaintiffs fail to allege that they expected to be paid for the data they allege was transmitted, meaning their unjust enrichment claim cannot survive.

For the reasons set forth below, plaintiffs' claims should be dismissed.

## FACTUAL BACKGROUND

Except where noted, this Motion recites facts pleaded in the petition as presumed true.

### I. The Parties

Plaintiffs claim to have been patients at Houston Methodist hospitals since 2017 and have used the hospital system's website "consistently since becoming patients." Pet. ¶ 106. Specifically, they allege they used Houston Methodist's website and MyChart portal to schedule appointments, review their personal health information, communicate with the hospital, request doctor referrals, renew prescriptions, and obtain their history of lab results. *Id.* ¶ 110.

Houston Methodist is a non-profit healthcare provider based in Houston. Pet. ¶¶ 3, 9. Patients can search for doctors and make appointments on its website. *Id.* ¶

9. Its patients also may utilize a MyChart patient portal. *Id.* These websites help patients "book[] medical appointments and procedures, locat[e] treatment facilities[,] search[] for physicians and information about specific medical conditions, treatment options, and services, [and] communicat[e] medical symptoms[.]" *Id.* ¶ 10.

Plaintiffs filed suit in state district court in Harris County, Texas. Houston Methodist was served on February 7, 2024, and timely removed the case on March 4, 2024. *See* ECF No. 1.

## II. The Disputed Software Applications

Houston Methodist configured "Facebook Tracking Pixel" software on its website. *Id.* ¶ 9. The Pixel is software "code that advertisers can integrate into their webpages" that can "track user actions" on a website to help businesses "target customers and advertise their services." *Id.* ¶¶ 36-40. When a user accesses a page hosting the Pixel software, the user's "communications with the host webpage are . . . duplicated and sent to Facebook[.]" *Id.* ¶ 38.

According to plaintiffs, this software provided Facebook with patients' "IP addresses, and/or device IDs" as well as searches, treatment requests, addresses, and contact information. *Id.* ¶ 45. The software also transmitted patients' "Facebook IDs," a unique identifier linked to a person's Facebook profile. *Id.* ¶¶ 45, 47. This

information "travels directly from the [website host's] server to Facebook's server." *Id.* ¶ 50.

The petition also cites to Conversion API, a software "designed to create a direct connection between [web hosts'] marketing data and [Facebook]." *Id.* ¶ 51. Plaintiffs do not allege Houston Methodist did install this API software but say it was "likely installed and implemented." *Id.* ¶ 14. According to plaintiffs, API software collects and sends communications to Facebook that were received and stored by the website host's server. *Id.* ¶¶ 51-52.

Plaintiffs are Facebook users who "visited [Houston Methodist's] Website[s] while logged into Facebook." *Id.* ¶ 109. They say the websites sent their private information to "Facebook, Google, and others" when they used the sites. *Id.* ¶ 111. While their petition has scattered references to "Google and others," it does not allege the use of software other than Facebook's Pixel.

In 2022, Houston Methodist removed the Pixel software from its websites. *See* Feathers, "Facebook Is Receiving Sensitive Medical Info. from Hospital Websites," The Markup (June 16, 2022), *available at* https://themarkup.org/pixel-hunt/2022/06/16/facebook-is-receiving-sensitive-medical-information-from-hospital-websites (attached as Ex. A; cited at Pet. ¶ 56, n.15).[1]

---

[1] On a Rule 12(b)(6) motion, a court may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that

## LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Dismissal is required if the allegations do not "nudge[] [the plaintiff's] claims across the line from conceivable to plausible." *Id.*

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Electrostim Med. Servs., Inc. v. Health Care Serv. Corp.*, 614 F. App'x 731, 744 (5th Cir. 2015) (citation omitted). Moreover, dismissal is proper "if the complaint lacks an allegation regarding a required element necessary to obtain relief." *Torch Liquidating Trust ex rel. Bridge Assocs. L.L.C. v. Stockstill*, 561 F.3d 377, 384 (5th Cir. 2009) (citation omitted).

---

are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bk. PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

## ARGUMENT AND AUTHORITIES

### I. Plaintiffs Do Not Adequately Allege an Invasion of Privacy Tort.

Plaintiffs first allege a claim for invasion of privacy. Pet. ¶¶ 135-44. Texas law recognizes four types of privacy torts: "1. Intrusion upon the plaintiff's seclusion or solitude, or into his private affairs[;] 2. Public disclosure of embarrassing private facts about the plaintiff[;] 3. Publicity [that] places the plaintiff in a false light in the public eye[; and] 4. Appropriation, for the defendant's advantage, of the plaintiff's name or likeness." *Ross v. Midwest Commc'ns, Inc.*, 870 F.2d 271, 273 (5th Cir. 1989) (Texas law) (citation omitted).

Plaintiffs allege a claim for "intrusion" on their "seclusion." *See* Pet. ¶¶ 135-44 (reciting elements for intrusion on seclusion). The claim fails. The tort occurs from (1) an intentional (2) intrusion, physically or otherwise, upon another's solitude, seclusion, or private affairs or concerns, which (3) would be highly offensive to a reasonable person. *See Trusty v. Walmart Inc.*, 2020 WL 2497733, at *2 (S.D. Tex. May 13, 2020); *Valenzuela v. Aquino*, 853 S.W.2d 512, 513 (Tex. 1993).

A *virtual* intrusion such as alleged here is not actionable in Texas. Courts considering the tort have held that such allegations do not constitute tortious intrusion upon seclusion. Separately, plaintiffs fail to plead any intentional act by

Houston Methodist or that the alleged intrusion would be highly offensive to a reasonable person. This claim should be dismissed.

**A. Virtual "intrusion" is not sufficient.**

For a seclusion claim, courts require fact allegations of a *physical* invasion of the plaintiff's property or eavesdropping by wiretaps, microphones, or spying. *See Ross*, 870 F.2d 271 at 273 (seclusion tort exists "only when there has been 'a physical invasion of a person's property or . . . eavesdropping on another's conversation with the aid of wiretaps, microphones, or spying'" (citation omitted)); *Walters v. Blue Cross and Blue Shield of Tex., Inc*., 2022 WL 902735, at *4 (N.D. Tex. March 28, 2022) (collecting cases finding virtual intrusions to be insufficient); *see also Graham v. JPMorgan Chase Bk., Nat. Ass'n*, 2015 WL 4431199, at *19 (S.D. Tex. July 17, 2015) (plaintiff's seclusion claim fails "because she does not allege, nor does she have any evidence of, a physical invasion of her property or of eavesdropping on her conversations through wire taps, microphones, or spying"); *Morales v. Barnes*, 2017 WL 6759190, at *5 (Tex. App.—Dallas 2017, no pet.) (collecting cases finding that physical invasion or eavesdropping is required for a seclusion claim).

Plaintiffs do not allege the physical invasion necessary to sustain a claim for intrusion upon seclusion, and the claim should be dismissed. *See Doe v. United States*, 83 F. Supp. 2d 833, 840-41 (S.D. Tex. 2000) (dismissing claim where no physical invasion alleged); *Wise v. Wilmoth*, 2017 WL 3267924, at *16 (N.D. Tex.

July 3, 2017) ("Usually an action for intrusion upon one's seclusion is found only when there has been a physical invasion of a person's property or . . . eavesdropping on another's conversation with the aid of wiretaps, microphones, or spying." (citation omitted)). "Texas courts 'have consistently held that an intrusion upon seclusion claim fails without evidence of a physical intrusion or eavesdropping on another's conversation with the aid of wiretaps, microphones, or spying.'" *Cunningham v. Mark D. Guidubaldi & Assocs., LLC*, 2019 WL 1119365, at *10 (E.D. Tex. Jan. 11, 2019) (citation omitted), *report & rec. adopted*, 2019 WL 1117915 (E.D. Tex. March 11, 2019).

For example, in *Walters*, the defendant allegedly emailed plaintiff's medical records to counsel for plaintiff's ex-wife in a child custody proceeding, rather than to the court for in-camera review. 2022 WL 902735, at *1. Because this alleged only a "virtual intrusion," the court dismissed the seclusion claim. The "case law does not support a contorted view that disclosure of medical records to a third party qualifies as an act of intrusion, even though the disclosure exceeded prior authorization." *Id.* at *4. The same is true here. The seclusion claim fails and should be dismissed.

**B. Plaintiffs have not adequately pleaded that any intrusion was intentional.**

Even if a virtual intrusion were sufficient (it is not), the seclusion claim still fails because plaintiffs plead no *facts* that show the hospital willfully or intentionally intruded on their privacy.

"Texas courts considering intrusion on seclusion or solitude have interpreted this tort to be a willful, unwarranted invasion of privacy that would be highly offensive to a reasonable person." *Summerlin v. Barrow*, 2018 WL 1322172, at *3 (N.D. Tex. Mar. 13, 2018). Here, plaintiffs merely allege that the hospital "intentionally disclosed the substance and nature of [their] communications to third parties[.]" Pet. ¶ 138. Rote allegations are insufficient to plead willful or intentional intrusion. For example, they do not allege that Houston Methodist knew whether or what patient information was being disclosed to Facebook or any third party or any other *facts* showing intent.

Because plaintiffs allege no facts "to support this summary allegation," dismissal is proper. *Ball v. United Parcel Serv., Inc.*, 2011 WL 1642148, at *2 (S.D. Tex. Apr. 29, 2011) (dismissing seclusion claim for doing no more than quoting the required elements).

### C. Plaintiffs do not allege an intrusion highly offensive to a reasonable person.

Finally, one must allege facts showing an intrusion that would be "highly offensive" to a reasonable person. *See Valenzuela*, 853 S.W.2d at 513. "To be actionable, the intrusion must be highly offensive meaning that it must be unreasonable, unjustified, or unwarranted." *Cherkaoui v. Santander Consumer USA, Inc.*, 32 F. Supp. 3d 811, 816 (S.D. Tex. 2014).

Where a defendant gets no private information "by improper means," there is "no personal intrusion" that is highly offensive. *Summerlin*, 2018 WL 1322172, at *3 (dismissing seclusion claim: "complaint reflects that defendant was a recipient of the letter," so there was no "personal intrusion into plaintiff's private affairs"). Here, based on their petition, plaintiffs transmitted their information to the hospital, which therefore was a proper and intended recipient of the information. *See, e.g.*, Pet. ¶ 11.

Separately, the petition alleges no specific facts about what information went to Facebook, when it occurred, or whether the hospital knew of an improper transmittal. As such, plaintiffs have failed to allege that any intrusion was *highly offensive* to a reasonable person.

> Without further detail concerning the nature of the recorded conversations (i.e. location, participants, content, duration, etc.) it is impossible to determine whether they were private in nature or whether Defendant's act of recording was "highly" offensive under the circumstances.

*Banik v. Tamez*, 2017 WL 11713725, at *3 (S.D. Tex. Sept. 20, 2017).

This is particularly true since plaintiffs willingly shared the information with the hospital. *See Williams v. Google, LLC*, 2021 WL 3612300, at *7 (E.D. Tex. July 16, 2021), *report & rec. adopted*, 2021 WL 3603769 (E.D. Tex. Aug. 13, 2021) ("if Plaintiffs used Google's products and services, even if for a limited time, they did so with knowledge and consent that Google may record their activities and make use of the data collected. Without more specific allegations, the pleadings do not

demonstrate Google's purported 'intrusion' would be highly offensive to a reasonable person"); *Thompson v. City of Arlington, Tex.*, 838 F. Supp. 1137, 1155 (N.D. Tex. 1993) ("Whether such consent [by the officer] was voluntary, the court concludes that, as a matter of law, the obtaining of such information from a police officer seeking to return to full active duty would not have been highly offensive to a reasonable person.").

**D. These sorts of claims are routinely dismissed.**

The elements of intrusion upon seclusion under Texas law mirror those in other venues, and other courts considering claims that a hospital's use of Facebook software is an intrusion on seclusion have dismissed such claims. *See, e.g.*, *Murphy v. Thomas Jefferson Univ. Hosps., Inc.*, 2023 WL 7017734, at *6 (E.D. Pa. Oct. 10, 2023) ("without more information about the contents of Plaintiffs' communications . . . allegations that Jefferson Health's conduct was 'highly offensive' similarly fall short of the mark"); *Hartley v. Univ. of Chicago Med. Ctr.*, 2023 WL 7386060, at *2 (N.D. Ill. Nov. 8, 2023) (dismissing seclusion claim where plaintiff was willing party to communication).

In sum, plaintiffs' seclusion claim fails in its entirety and should be dismissed.

## II. The ECPA Claim Fails Because Plaintiffs Do Not Allege an "Interception."

The claim for violation of the Electronic Communications Privacy Act ("ECPA" or "Wiretap Act") fails. As a party to the communications, Houston Methodist did not "intercept" them, which is required for liability.

For an actionable violation, there must be an "interception." 18 U.S.C.A. § 2511(1)(a)-(e). Under the statute, it is *not* unlawful to intercept a communication to which you are a *party*.

> It shall *not* be unlawful under this chapter for a person . . . to intercept a wire, oral, or electronic communication where such person is *a party to the communication* or where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State.

18 U.S.C. § 2511(d) (emphasis added). Here, Houston Methodist was a party to the alleged entries by plaintiffs into the hospital's website or portal.

As for the exception for criminal or tortious acts, a plaintiff must allege a "criminal or tortious purpose" that is "independent" of the purported Wiretap Act violation. *See, e.g.*, *Jeanty v. TXFM, Inc.*, 2020 WL 6483376, at *6 (E.D. Tex. Aug. 18. 2020), *report & rec. adopted*, 2020 WL 5797825 (E.D. Tex. Sept. 29, 2020). The "focus is not upon whether the interception itself violated another law; it is upon whether the purpose for the interception–its intended use–was criminal or tortious." *Sussman v. American Broadcasting Cos.*, 186 F.3d 1200, 1202 (9th Cir. 1999). So,

"reception of information voluntarily provided by another party is not an 'interception'" and cannot give rise to an ECPA claim. *Jeanty*, 2020 WL 6483376, at *6 (collecting cases dismissing ECPA claims where the alleged interception was voluntarily made to defendant).

Accordingly, courts dismiss these claims where, as here, the allegations establish that the defendant was a party to the communication and plaintiffs allege no independent tortious or criminal purpose. *See, e.g.*, *In re Vistaprint Corp Mktg. & Sales Pracs. Litig.*, 2009 WL 2884727, at *9 (S.D. Tex. Aug. 31, 2009) (granting motion to dismiss ECPA claim where the defendants "merely received the information transferred to [them]" by the plaintiffs, which is not an "interception" (citation omitted)), *aff'd sub nom. Bott v. Vistaprint USA Inc.*, 392 F. App'x 327 (5th Cir. 2010); *Merisier v. Johnson Cnty., Tex.*, 2021 WL 1711468, at *5 (E.D. Tex. Jan. 31, 2021) ("Because the one-party consent exception applies . . . each claim grounded in violations of either the state or federal wiretap statutes against [defendants] should be dismissed."), *report & rec. adopted*, 2021 WL 1709950 (E.D. Tex. Apr. 29, 2021); *see also In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 142-43 (3d Cir. 2015) ("Because the defendants were the intended recipients of the transmissions at issue . . . we agree that § 2511(2)(d) means the defendants have done nothing unlawful under the Wiretap Act."); *Goss v. Bonner*, 2020 WL 1479131, at *3 (D. Ariz. March 6, 2020) (dismissing ECPA claim

because "the only allegations that come close to alleging a criminal or tortious act are conclusory . . . . The FAC lacks any factual allegations supporting a finding that Watabe recorded the conversation to commit criminal or tortious conduct"); *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 402 F. Supp. 3d 615, 686 (N.D. Cal. 2019) ("Because defendants were participants in the recorded conversations, the recordings can violate the Act only if they were intercepted for the purpose of committing criminal or tortious acts." (citation omitted)).

Other courts have dismissed similar claims against hospitals for use of Facebook Pixel have due to the lack of an *improper* interception. *See, e.g.*, *Murphy*, 2023 WL 7017734, at *4 (where hospital was recipient of the communication, ECPA claim "cannot proceed absent sufficient allegations to show Jefferson Health intercepted communications"); *Hartley*, 2023 WL 7386060, at *1-2 (hospital "is a necessary party to any communication from a patient" concerning healthcare services and thus "cannot be liable to the receipt of the communication" under the ECPA); *Kurowski v. Rush Sys. for Health*, 659 F.Supp.3d 931, 938 (N.D. Ill., 2023) ("Rush—and not Facebook, Google, or Bidtellect—was the intended recipient of the allegedly intercepted communications here. Rush is therefore a party to those communications and cannot be liable under the Wiretap Act for its alleged interception of them, if such an interception even occurred").

The same result is warranted here. The petition says the hospital was the intended recipient of the allegedly intercepted communications. *See, e.g.*, Pet. ¶¶ 11, 106, 108, 114, 137.) Consistent with precedent in this jurisdiction and elsewhere, Houston Methodist therefore cannot be liable for an "interception" under the ECPA, and this claim should be dismissed.

### III. Plaintiffs Do Not Adequately Allege Breach of An Implied Contract.

The petition alleges that Houston Methodist breached an "implied" contract arising from promises allegedly made in its privacy policy to keep private information provided by patients "secure and confidential." Pet. ¶ 166. This claim fails. It ignores the actual language of the privacy policy and does not allege a meeting of the minds on terms of the so-called implied contract.

"The elements of a contract, express or implied, are identical. Accordingly, the elements of either type of contract are (1) an offer, (2) an acceptance, (3) a meeting of the minds, (4) each party's consent to the terms, and (5) execution and delivery of the contract with the intent that it be mutual and binding." *Plotkin v. Joekel*, 304 S.W.3d 455, 476-77 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (cleaned up). A plaintiff must allege facts sufficient to show each of these elements. *See Electrostim*, 614 F. App'x at 744.

Here, the implied contract claim fails because the petition does not allege a meeting of the minds as to all essential terms of an implied contract. Plaintiffs ground

their claim on the terms of the Houston Methodist privacy policy. Pet. ¶ 166. They say it has sweeping promises about privacy. *Id*. ¶¶ 67-73. But they selectively quote from the policy. They allege, contrary to its terms, that the policy broadly addresses "identifiable health information." *Id*. ¶ 67. Not so. The policy is specific. It explains how the hospital treats "protected health information," a defined phrase:

> Protected health information refers to your personal health information found in your medical and billing records. This includes information, whether oral, written or recorded in electronic form, that is created or received by us and relates to your past, present, or future physical or mental health conditions or the payment for health care services.

Houston Methodist, Notice of Privacy Practices (emphasis added) (Ex. B) (cited in Pet. at ¶¶ 67-73.)

Plaintiffs elide the actual language of the policy because "protected health information" does not encompass the kind of information plaintiffs allege was transmitted by Pixel software. The petition alleges the hospital's website provided Facebook with "Facebook IDs, IP addresses, and/or device IDs and the other information they inputted, including not only their medical searches, treatment requests, and the webpages the view, but also their home address, zip code, or phone number." Pet. ¶ 45. This information goes beyond what the policy states. Plaintiffs plead no facts to indicate that Houston Methodist had any agreement with them about Facebook IDs or other information that they say was transmitted by Pixel software.

Instead, the petition resorts to sweeping statements about the hospital's alleged implied or unsourced promises about protecting anonymity and confidentiality. *See, e.g., id.* ¶ 73 (to "preserve the confidentiality of their Private Information and the anonymity of their identities"); *id.* ¶ 23 ("to protect Plaintiffs' and Class Members' Private Information and maintain the privacy and confidentiality of communications that patients exchanged with Defendant"). But plaintiffs do not allege (and cannot allege) a meeting of the minds on such open-ended promises to protect patient anonymity. Indeed, they concede that the privacy policy lists instances where patients' "protected health information" may be disclosed for hospital operations, research, payment, and the like. *Id.* ¶ 68. In other words, the policy sets out a detailed but limited scope of protections for sensitive information that it creates or gets. It gives no unequivocal assurance about all data that might arise from interactions with its online tools, as the petition incorrectly contends.

Absent facts showing a meeting of the minds on the implicit contract terms that supposedly were breached, the implied contract claim should be dismissed. Because plaintiffs have not pleaded "facts that would plausibly support the elements of a breach of implied contract, [they] fail[] to state a claim upon which relief may be granted." *Thymes v. Gillman Cos.*, 2018 WL 1281852, at *2 (S.D. Tex. March 9, 2018); *see also Keane v. Fox Television Stations, Inc.*, 297 F. Supp. 2d 921, 942

(S.D. Tex. 2004) (dismissing implied contract claim since documents "incorporated by reference into his Second Amended Complaint undercut" the terms of the alleged contract), *aff'd* 129 F. App'x 874 (5th Cir. 2005).

**IV. Plaintiffs' Unjust Enrichment Claim Fails.**

In the alternative to its implied contract claim, plaintiffs plead that Houston Methodist was unjustly enriched by receipt and disclosure of their information. Pet. ¶ 178. They do not plead a cognizable claim for unjust enrichment.

"To recover under unjust enrichment, a claimant must prove: (1) that valuable services were rendered or materials furnished; (2) for the person sought to be charged; (3) which services and materials were accepted by the person sought to be charged, used, and enjoyed by that person; and (4) under such circumstances as reasonably notified the person sought to be charged that the plaintiff in performing such services was expecting to be paid by the person sought to be charged." *Jupiter Enters., Inc v. Harrison*, 2002 WL 318305, at *3 (Tex. App.—Dallas 2002, no pet.) (citations omitted). Importantly, "unjust enrichment is not an independent claim for relief but rather a 'theor[y] of recovery tied to other claims for relief and relevant to damages calculations.'" *Juan Antonio Sanchez, PC v. Bank of S. Tex.*, 494 F. Supp. 3d 421, 440 (S.D. Tex. 2020) (citation omitted). Thus, if there is no other prevailing claim for relief, an unjust enrichment claim fails. *Id.*

First, plaintiffs' other claims suffer fatal pleading defects, so the unjust enrichment claim should be dismissed. *See Applin v. Deutsche Bk. Nat. Trust*, 2014 WL 1024006, at *7 (S.D. Tex. 2014) (finding that unjust enrichment is not an independent claim); *Schouest v. Medtronic, Inc.*, 92 F. Supp.3d 606, 614 (S.D. Tex. 2015) ("because unjust enrichment is not a stand-alone claim, and there are no remaining claims upon which it can be based, the claim must be dismissed").

Second, even if it were a standalone claim, plaintiffs failed to plead the elements required for the claim to survive. The claim is based on the assertion that data transmitted through the Pixel software had "tremendous economic value." Pet. ¶ 115. Even if true, that is not enough. Unjust enrichment claims require that a plaintiff expected payment to follow from services rendered or materials furnished. The petition nowhere alleges that plaintiffs "expect[ed] to be paid" for the data that they claim is valuable. *Jupiter Enters.*, 2002 WL 318305, at *3. To the contrary, the petition alleges that they had *no* expectation their data would be used, much less that they would be compensated for it. *See, e.g.*, Pet ¶ 139.

Therefore, the unjust enrichment claim should be dismissed.

## CONCLUSION

For these reasons, defendant Houston Methodist respectfully requests that the Court dismiss all claims in plaintiffs' petition and grant it all other appropriate relief.

Dated: March 11, 2024

Respectfully submitted,

*/s/ R. Paul Yetter*

R. Paul Yetter
State Bar No. 22154200
pyetter@yettercoleman.com
Tracy LeRoy
State Bar No. 24062847
tleroy@yettercoleman.com
Mary E. Bracewell
State Bar No. 24139388
mbracewell@yettercoleman.com
YETTER COLEMAN LLP
811 Main Street, Suite 4100
Houston, Texas 77002
(713) 632-8000

ATTORNEYS FOR DEFENDANT
THE METHODIST HOSPITAL

## CERTIFICATE OF SERVICE

I certify that on March 11, 2024, a copy of the foregoing was served via email or ECF service to all parties who have entered an appearance in this lawsuit.

*/s/ R. Paul Yetter*
R. Paul Yetter