**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| EDWARD SWEAT and MARIE GARZA SWEAT, individually and on behalf of a class of similarly situated individuals, | § | |
| | § | |
| | § | |
| | § | |
| Plaintiffs, | § | |
| v. | § | Civil Action No. 24-CV-775 |
| | § | |
| HOUSTON METHODIST HOSPITAL, | § | |
| | § | |
| Defendant. | § | |
| | § | Assigned to: Hon. Sim Lake |

**DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**

R. Paul Yetter
Federal Bar No. 3639
State Bar No. 22154200
pyetter@yettercoleman.com
Tracy N. LeRoy
Federal Bar No. 860752
State Bar No. 24062847
tleroy@yettercoleman.com
Mary E. Bracewell
Federal Bar No. 3874146
State Bar No. 24139388
mbracewell@yettercoleman.com
YETTER COLEMAN LLP
811 Main St., Suite 4100
Houston, Texas 77002
(713) 632-8000

ATTORNEYS FOR DEFENDANT
THE METHODIST HOSPITAL

April 12, 2024

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..... ii

STATEMENT AND SUMMARY OF ISSUES ..... 1

NATURE AND STAGE OF PROCEEDING ..... 2

FACTUAL BACKGROUND ..... 2

I. The Parties ..... 2

II. The Disputed Software Applications ..... 3

LEGAL STANDARD ..... 4

ARGUMENT AND AUTHORITIES ..... 5

I. Plaintiffs Do Not Adequately Allege an Invasion of Privacy Tort. ..... 5

A. Virtual "intrusion" is not sufficient under Texas law. ..... 5

B. Plaintiffs have not adequately pleaded that any intrusion was intentional. 7

C. Plaintiffs do not allege an intrusion highly offensive to a reasonable person. ..... 7

D. These sorts of claims are routinely dismissed. ..... 9

II. The ECPA Claim Fails ..... 9

A. Plaintiffs do not allege an "interception." ..... 9

B. Plaintiffs do not adequately plead an exception to ECPA's one-party consent rule. ..... 11

III. Plaintiffs' Unjust Enrichment Claim Fails. ..... 13

CONCLUSION ..... 14

CERTIFICATE OF SERVICE ..... 15

## TABLE OF AUTHORITIES

Cases Page(s)

*Amin v. United Parcel Service, Inc.*,
66 F. 4th 568 (5th Cir. 2023) .......... 5, 6

*Applin v. Deutsche Bk. Nat. Trust*,
2014 WL 1024006 (S.D. Tex. 2014) .......... 13

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 4

*Ball v. United Parcel Serv., Inc.*,
2011 WL 1642148 (S.D. Tex. Apr. 29, 2011) .......... 7

*Banik v. Tamez*,
2017 WL 11713725 (S.D. Tex. Sept. 20, 2017) .......... 8

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 4

*Cherkaoui v. Santander Consumer USA, Inc.*,
32 F. Supp. 3d 811 (S.D. Tex. 2014) .......... 7

*Cunningham v. Mark D. Guidubaldi & Assocs., LLC*,
2019 WL 1119365 (E.D. Tex. Jan. 11, 2019), *report & rec. adopted*, 2019 WL 1117915 (E.D. Tex. March 11, 2019) .......... 6

*Desnick v. Am. Broad. Cos., Inc.*,
44 F.3d 1345 (7th Cir. 1995) .......... 12, 13

*Doe v. United States*,
83 F. Supp. 2d 833 (S.D. Tex. 2000) .......... 6

*Electrostim Med. Servs., Inc. v. Health Care Serv. Corp.*,
614 F. App'x 731 (5th Cir. 2015) .......... 4

*Goss v. Bonner*,
2020 WL 1479131 (D. Ariz. March 6, 2020) .......... 12

*Graham v. JPMorgan Chase Bk., Nat. Ass'n*,
2015 WL 4431199 (S.D. Tex. July 17, 2015) .......... 6

*Hartley v. Univ. of Chicago Med. Ctr.*,
2023 WL 7386060 (N.D. Ill. Nov. 8, 2023) .......... 9, 10

*In re DoubleClick Inc. Privacy Litig.*,
154 F.Supp.2d 497 (S.D.N.Y.2001)........................................................................... 12

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
806 F.3d 125 (3d Cir. 2015)................................................................................... 10

*In re Google Inc. Gmail Litig.*,
2014 WL 1102660 n.13 (N.D. Cal. Mar. 18, 2014)........................................................... 12

*In re Sec. Litig. BMC Software, Inc.*,
183 F. Supp. 2d 860 (S.D. Tex. 2001) ........................................................................ 4

*In re Vistaprint Corp Mktg. & Sales Pracs. Litig.*,
2009 WL 2884727 (S.D. Tex. Aug. 31, 2009), *aff'd sub nom. Bott v. Vistaprint USA Inc.*, 392 F. App'x 327 (5th Cir. 2010) ......................................................................... 10

*Jeanty v. TXFM, Inc.*,
2020 WL 6483376 (E.D. Tex. Aug. 18, 2020), *report & rec. adopted*, 2020 WL 5797825 (E.D. Tex. Sept. 29, 2020................................................................................ 10, 11

*Johnson v. MHMR Auth. of Brazos Valley*,
--- F. Supp. 3d ----, 2023 WL 8630064 (S.D. Tex. Dec. 13, 2023) .......................................... 7

*Juan Antonio Sanchez, PC v. Bank of S. Tex.*,
494 F. Supp. 3d 421 (S.D. Tex. 2020) ...................................................................... 13

*Jupiter Enters., Inc v. Harrison*,
2002 WL 318305 (Tex. App.—Dallas 2002, no pet.) ..................................................... 13, 14

*Kurowski v. Rush Sys. for Health*,
659 F.Supp.3d 931 (N.D. Ill., 2023) .................................................................... 10, 11

*Lone Star Fund V (U.S.), L.P. v. Barclays Bk. PLC*,
594 F.3d 383 (5th Cir. 2010) ..................................................................................... 4

*Merisier v. Johnson Cnty., Tex.*,
2021 WL 1711468 (E.D. Tex. Jan. 31, 2021), *report & rec. adopted*, 2021 WL 1709950 (E.D. Tex. Apr. 29, 2021)..................................................................................................... 10

*Morales v. Barnes*,
2017 WL 6759190 (Tex. App.—Dallas 2017, no pet.) ........................................................... 6

*Murphy v. Thomas Jefferson Univ. Hosps., Inc.*,
2023 WL 7017734 (E.D. Pa. Oct. 10, 2023)........................................................................ 9, 10

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
402 F. Supp. 3d 615 (N.D. Cal. 2019) .......... 12

*Ross v. Midwest Commc'ns, Inc.*,
870 F.2d 271 (5th Cir. 1989) .......... 5

*Schouest v. Medtronic, Inc.*,
92 F. Supp.3d 606 (S.D. Tex. 2015) .......... 13

*Smocks v. Preston Heights Apartment,*
2024 WL 38284 (E.D. Tex. Jan. 3, 2024), *appeal filed*. .......... 8

*Summerlin v. Barrow*,
2018 WL 1322172 (N.D. Tex. Mar. 13, 2018) .......... 7, 8

*Thompson v. City of Arlington, Tex.*,
838 F. Supp. 1137 (N.D. Tex. 1993) .......... 8, 9

*Torch Liquidating Trust ex rel. Bridge Assocs. L.L.C. v. Stockstill*,
561 F.3d 377 (5th Cir. 2009) .......... 4

*Trusty v. Walmart Inc.*,
2020 WL 2497733 (S.D. Tex. May 13, 2020) .......... 5

*Valenzuela v. Aquino*,
853 S.W.2d 512 (Tex. 1993) .......... 5, 7

*Walters v. Blue Cross and Blue Shield of Tex., Inc.*,
2022 WL 902735 (N.D. Tex. March 28, 2022) .......... 6, 7

*Williams v. Google, LLC*,
2021 WL 3612300 (E.D. Tex. July 16, 2021), *report & rec. adopted*, 2021 WL 3603769 (E.D. Tex. Aug. 13, 2021) .......... 8

*Wise v. Wilmoth*,
2017 WL 3267924 (N.D. Tex. July 3, 2017) .......... 6

**Statutes**

18 U.S.C.A. § 2511 .......... 9, 11

**Rules**

Fed. R. Civ. P. 12 .......... 1, 4

Pursuant to Fed. R. Civ. P. 12(b)(6), defendant The Methodist Hospital, d/b/a Houston Methodist Hospital ("Houston Methodist") respectfully moves to dismiss plaintiffs' amended complaint in its entirety.

## STATEMENT AND SUMMARY OF ISSUES

Plaintiffs bring a putative class action alleging that a hospital's use of third-party software on its website violated their privacy by transmitting information to a vendor. As evident by the privacy policy plaintiffs rely upon, patient privacy is a core tenant of Houston Methodist's practice. Their complaint lacks sufficient allegations to support a claim for any privacy violation, like basic facts about when any alleged transmission occurred and whether the hospital was even aware of them. They rely on conclusory and formulaic recitations of their asserted claims, which fail on their face and should be dismissed.

Specifically, plaintiffs' claims should be dismissed for the following reasons: (1) Intrusion Upon Seclusion: Texas courts do not recognize virtual intrusions as alleged here to be actionable invasions of seclusion and, in any event, plaintiffs fail to adequately plead that any alleged intrusion was intentional as required to proceed on this claim; (2) Electronic Communications Privacy Act: plaintiffs voluntarily provided information to Houston Methodist on its website, meaning that Houston Methodist was a party to the communication and cannot be liable for any "interception" under the Act, and plaintiffs do not adequately allege any exception to Act's one-party consent provision; and (3) Unjust Enrichment: Texas law does not recognize an independent claim for unjust enrichment and, even if it did, plaintiffs fail to allege that they expected to be paid for the data they allege was transmitted, meaning their unjust enrichment claim cannot survive.

For the reasons set forth below, plaintiffs' claims should be dismissed.

## NATURE AND STAGE OF PROCEEDING

Plaintiffs filed suit in state court in Harris County, Texas. Houston Methodist was served on February 7, 2024, and timely removed the case on March 4, 2024. *See* ECF No. 1. The case was assigned to the Hon. David Hittner. Houston Methodist moved to dismiss the petition on March 11, 2024. *See* ECF No. 4. On March 29, 2024, Plaintiffs filed an amended complaint. *See* ECF No. 6. On April 2, 2024, the Court denied Houston Methodist's motion to dismiss as moot given the filing of an amended complaint. *See* ECF No. 8. Judge Hittner then issued a recusal order, and the case was re-assigned. *See* ECF Nos. 9-10.

## FACTUAL BACKGROUND

Except where noted, this Motion recites facts pleaded in the amended complaint ("FAC") as presumed true.

### I. Parties

Plaintiffs claim to have been patients at Houston Methodist hospitals since 2017 who used the hospital system's website "consistently since becoming patients." FAC ¶112. Specifically, they allege they used Houston Methodist's website and MyChart portal to schedule appointments, search for symptoms, review their personal health information, communicate with the hospital, request doctor referrals, renew prescriptions, and obtain their history of lab results. *Id.* ¶115.

Houston Methodist is a non-profit healthcare provider based in Houston. FAC ¶3, ¶7. Patients can search for doctors and make appointments on its website. *Id.* ¶7. Its patients also may utilize a MyChart patient portal. *Id.* These websites help patients "book[] medical appointments and procedures, locat[e] treatment facilities[,] search[] for physicians and information about specific medical conditions, treatment options, and services, [and] communicat[e] medical symptoms." *Id.* ¶8.

## II. Disputed Software Applications

Houston Methodist configured the "Facebook Tracking Pixel" software device on its website. FAC ¶7. The Pixel is "code that advertisers can integrate into their webpages" that can track user actions on a website to help businesses "target customers and advertise their services." *Id.* ¶¶33-34. When a user accesses a page hosting the Pixel software, the user's "communications with the host webpage are . . . duplicated and sent to Facebook." *Id.* ¶35.

According to plaintiffs, this software provided Facebook with patients' "IP addresses, and/or device IDs," as well as searches, treatment requests, addresses, and contact information. *Id.* ¶42. The software also transmitted patients' "Facebook IDs," a unique identifier linked to a person's Facebook profile. *Id.* ¶42, ¶44. This information "travels directly from the [website host's] server to Facebook's server." *Id.* ¶47.

The complaint cites to Conversion API, a software "designed to create a direct connection between [web hosts'] marketing data and [Facebook]." *Id.* ¶48 (quote omitted). Plaintiffs do not allege Houston Methodist installed this software, but "infer that it implemented [this tool]." *Id.* ¶50. According to plaintiffs, Conversion API collects and sends communications to Facebook that were received and stored by the website host's server. *Id.* ¶¶51-52.

Plaintiffs "are currently and have been patients at" Houston Methodist's hospitals since 2017. *Id.* ¶112. They are Facebook users who "visited [Houston Methodist's] Website[s] while logged into Facebook." *Id.* ¶104. Plaintiffs allege the websites sent their private information to "Facebook, Google, and others" when they used the sites. *Id.* ¶106. Notably, while the complaint has scattered references to "Google and others," it alleges no use of any tool but Facebook Pixel.

In 2022, Houston Methodist removed the Pixel from its websites. *See* Feathers, "Facebook Is Receiving Sensitive Medical Info. from Hospital Websites," *The Markup* (June 16, 2022),

*available at* https://themarkup.org/pixel-hunt/2022/06/16/facebook-is-receiving-sensitive-medical-information-from-hospital-websites (attached as Ex. A; cited at FAC ¶53 n.15).[1]

## LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Dismissal is required if the allegations do not "nudge[] [the plaintiff's] claims across the line from conceivable to plausible." *Id.*

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Electrostim Med. Servs., Inc. v. Health Care Serv. Corp.*, 614 F. App'x 731, 744 (5th Cir. 2015) (cite omitted). Moreover, dismissal is proper "if the complaint lacks an allegation regarding a required element necessary to obtain relief." *Torch Liquidating Trust ex rel. Bridge Assocs. L.L.C. v. Stockstill*, 561 F.3d 377, 384 (5th Cir. 2009) (cite omitted).

[1] On a Rule 12(b)(6) motion, a court may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bk. PLC*, 594 F.3d 383, 387 (5th Cir. 2010). This includes "documents 'integral to and explicitly relied on in the complaint,' that the defendant appends to [its] motion to dismiss, as well as the full text of documents that are partially quoted or referred to in the complaint." *In re Sec. Litig. BMC Software, Inc.*, 183 F. Supp. 2d 860, 882 (S.D. Tex. 2001).

## ARGUMENT AND AUTHORITIES

### I. Plaintiffs Do Not Adequately Allege an Invasion of Privacy Tort.

Plaintiffs first allege a claim for invasion of privacy. FAC ¶¶138-53. Texas law recognizes four types of privacy torts: "1. Intrusion upon the plaintiff's seclusion or solitude, or into his private affairs[;] 2. Public disclosure of embarrassing private facts about the plaintiff[;] 3. Publicity [that] places the plaintiff in a false light in the public eye[; and] 4. Appropriation, for the defendant's advantage, of the plaintiff's name or likeness." *Ross v. Midwest Commc'ns, Inc.*, 870 F.2d 271, 273 (5th Cir. 1989) (Texas law) (cite omitted).

Plaintiffs allege a claim for intrusion on their "seclusion." FAC ¶¶138-53 (citing elements for intrusion on seclusion). The claim fails. The tort occurs from an intentional intrusion, physically or otherwise, upon another's solitude, seclusion, or private affairs or concerns, which would be highly offensive to a reasonable person. *See Trusty v. Walmart Inc.*, 2020 WL 2497733, at *2 (S.D. Tex. May 13, 2020); *Valenzuela v. Aquino*, 853 S.W.2d 512, 513 (Tex. 1993).

A *virtual* intrusion such as alleged here is not actionable in Texas. Courts considering the tort have held that such allegations do not constitute tortious intrusion upon seclusion. Separately, plaintiffs fail to plead any intentional act by Houston Methodist or that the alleged intrusion would be highly offensive to a reasonable person. This claim should be dismissed.

#### A. Virtual "intrusion" is not sufficient under Texas law.

For a seclusion claim, courts require allegations of a *physical* invasion or quasi-trespass of the plaintiff's property or eavesdropping by wiretaps, microphones, or spying. The tort exists "only when there has been 'a physical invasion of a person's property or . . . eavesdropping on another's conversation with the aid of wiretaps, microphones, or spying.'" *Ross*, 870 F.2d 271 at 273 (cite omitted). "Texas courts have held that 'intrusion upon private affairs' typically requires either a trespass or an attempt to discover or perceive private information." *Amin v. United Parcel Serv.,*

*Inc.*, 66 F. 4th 568 (5th Cir. 2023) (recognizing claim where employee was forced to publicly defecate); *see also Walters v. Blue Cross & Blue Shield of Tex., Inc.*, 2022 WL 902735, at *4 (N.D. Tex. March 28, 2022) (collecting cases finding virtual intrusions to be insufficient); *Graham v. JPMorgan Chase Bk., Nat. Ass'n*, 2015 WL 4431199, at *19 (S.D. Tex. July 17, 2015) (plaintiff's claim fails; "she does not allege, nor does she have any evidence of, a physical invasion of her property or of eavesdropping on her conversations through wire taps, microphones, or spying"); *Morales v. Barnes*, 2017 WL 6759190, at *5 (Tex. App.—Dallas 2017, no pet.) (collecting cases finding that physical invasion or eavesdropping is required for a seclusion claim).

While the complaint alleges that Houston Methodist's "conduct constitutes an intentional physical or sensory intrusion," FAC ¶145, this allegation is simply a conclusory recitation of the elements. Plaintiffs allege no *facts* suggesting the physical invasion necessary to sustain this claim, which should be dismissed. *See Doe v. United States*, 83 F. Supp. 2d 833, 840-41 (S.D. Tex. 2000) (dismissing claim where no physical invasion alleged); *Wise v. Wilmoth*, 2017 WL 3267924, at *16 (N.D. Tex. July 3, 2017) ("Usually an action for intrusion upon one's seclusion is found only when there has been a physical invasion of a person's property or . . . eavesdropping on another's conversation with the aid of wiretaps, microphones, or spying.") (cite omitted). "Texas courts 'have consistently held that an intrusion upon seclusion claim fails without evidence of a physical intrusion or eavesdropping on another's conversation with the aid of wiretaps, microphones, or spying.'" *Cunningham v. Mark D. Guidubaldi & Assocs., LLC*, 2019 WL 1119365, at *10 (E.D. Tex.) (cite omitted), *report & rec. adopted*, 2019 WL 1117915 (E.D. Tex. March 11, 2019).

For example, in *Walters*, the defendant allegedly emailed plaintiff's medical records to counsel for plaintiff's ex-wife in a child custody proceeding, rather than to the court for in-camera review. 2022 WL 902735, at *1. Because this alleged only a "virtual intrusion," the court dismissed

the seclusion claim. The "case law does not support a contorted view that disclosure of medical records to a third party qualifies as an act of intrusion, even though the disclosure exceeded prior authorization." *Id.* at *4. The same is true here. The seclusion claim fails and should be dismissed.

**B. Plaintiffs have not adequately pleaded that any intrusion was intentional.**

Even if a virtual intrusion were sufficient (it is not), this claim fails because plaintiffs plead no facts that show the hospital willfully or intentionally intruded on their privacy.

"Texas courts considering intrusion on seclusion or solitude have interpreted this tort to be a willful, unwarranted invasion of privacy that would be highly offensive to a reasonable person." *Summerlin v. Barrow*, 2018 WL 1322172, at *3 (N.D. Tex. Mar. 13, 2018); *see also Johnson v. MHMR Auth. of Brazos Valley*, --- F. Supp. 3d ----, 2023 WL 8630064, at *6 (S.D. Tex. Dec. 13, 2023) ("Plaintiff's cause of action for invasion of privacy. . . is an intentional tort."). Here, plaintiffs allege that the hospital "intentionally disclosed the substance and nature of [their] communications to third parties." FAC ¶141. Rote allegations are insufficient to plead willful or intentional intrusion. For example, they do not allege that the hospital knew whether or what patient information was being disclosed to Facebook or any third party or any other facts showing intent.

Because plaintiffs allege no facts "to support this summary allegation," dismissal is proper. *Ball v. United Parcel Serv., Inc.*, 2011 WL 1642148, at *2 (S.D. Tex. Apr. 29, 2011) (dismissing seclusion claim for doing no more than quoting the required elements).

**C. Plaintiffs do not allege an intrusion highly offensive to a reasonable person.**

Finally, one must allege facts showing an intrusion that would be "highly offensive" to a reasonable person. *See Valenzuela*, 853 S.W.2d at 513. "To be actionable, the intrusion must be highly offensive meaning that it must be unreasonable, unjustified, or unwarranted." *Cherkaoui v. Santander Consumer USA, Inc.*, 32 F. Supp. 3d 811, 816 (S.D. Tex. 2014). An act of intrusion

"requires more than the disclosure of information to a third party." *Smocks v. Preston Heights Apartment,* 2024 WL 38284, at *4 (E.D. Tex. Jan. 3, 2024) (appeal pending).

Where a defendant does not obtain private information "by improper means," there is "no personal intrusion" that is highly offensive. *Summerlin*, 2018 WL 1322172, at *3 (dismissing seclusion claim: "complaint reflects that defendant was a recipient of the letter," so there was no "personal intrusion into plaintiff's private affairs"). Here, based on their complaint, plaintiffs transmitted their information to Houston Methodist, thus making it a proper and intended recipient of the information. *See, e.g.*, FAC ¶11.

Separately, the complaint alleges no specific facts about when any transmissions occurred or whether the hospital knew of an improper transmittal. As such, plaintiffs have failed to allege that any intrusion was *highly offensive* to a reasonable person.

> Without further detail concerning the nature of the recorded conversations (i.e. location, participants, content, duration, etc.) it is impossible to determine whether they were private in nature or whether Defendant's act of recording was "highly" offensive under the circumstances.

*Banik v. Tamez*, 2017 WL 11713725, at *3 (S.D. Tex. Sept. 20, 2017).

This is particularly true since plaintiffs willingly shared the information with the hospital. *See Williams v. Google, LLC*, 2021 WL 3612300, at *7 (E.D. Tex.), *report & rec. adopted*, 2021 WL 3603769 (E.D. Tex. Aug. 13, 2021) ("if Plaintiffs used Google's products and services, even if for a limited time, they did so with knowledge and consent that Google may record their activities and make use of the data collected. Without more specific allegations, the pleadings do not demonstrate Google's purported 'intrusion' would be highly offensive to a reasonable person"); *Thompson v. City of Arlington, Tex.*, 838 F. Supp. 1137, 1155 (N.D. Tex. 1993) ("Whether such consent [by the officer] was voluntary, the court concludes that, as a matter of law, the obtaining

of such information from a police officer seeking to return to full active duty would not have been highly offensive to a reasonable person.").

**D. These sorts of claims are rare, hard to sustain, and routinely dismissed.**

This intrusion tort in Texas mirrors that in other venues. Courts considering claims that a hospital's use of Facebook software is an intrusion on seclusion have dismissed such claims. *See, e.g.*, *Murphy v. Thomas Jefferson Univ. Hosps., Inc.*, 2023 WL 7017734, at *6 (E.D. Pa. Oct. 10, 2023) ("without more information about the contents of Plaintiffs' communications . . . allegations that Jefferson Health's conduct was 'highly offensive' similarly fall short of the mark"); *Hartley v. Univ. of Chicago Med. Ctr.*, 2023 WL 7386060, at *2 (N.D. Ill. Nov. 8, 2023) (dismissing seclusion claim where plaintiff was willing party to communication).

In sum, plaintiffs' seclusion claim fails in its entirety and should be dismissed.

**II. The ECPA Claim Fails.**

**A. Plaintiffs do not allege an "interception."**

The claim for violation of the Electronic Communications Privacy Act ("Wiretap Act") fails. As a party to the communications, Houston Methodist did not "intercept" them, which is required for liability.

For an actionable violation, there must be an "interception." 18 U.S.C.A. §2511(1)(a)-(e). Under the statute, it is *not* unlawful to intercept a communication to which you are a *party*.

> It shall *not* be unlawful under this chapter for a person . . . to intercept a wire, oral, or electronic communication where such person is *a party to the communication* or where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State.

18 U.S.C. § 2511(d) (emphasis added). Here, Houston Methodist was a party to the alleged entries by plaintiffs into the hospital's website or portal.

Courts dismiss these claims where, as here, the allegations establish that the defendant was a party to the communication and plaintiffs allege no independent tortious or criminal purpose. *See, e.g.*, *In re Vistaprint Corp Mktg. & Sales Pracs. Litig.*, 2009 WL 2884727, at *9 (S.D. Tex. Aug. 31, 2009) (dismissing Wiretap Act claim where defendants "merely received the information transferred to [them]" by the plaintiffs, which is not an "interception") (cite omitted), *aff'd sub nom. Bott v. Vistaprint USA Inc.*, 392 F. App'x 327 (5th Cir. 2010); *Merisier v. Johnson Cnty., Tex.*, 2021 WL 1711468, at *5 (E.D. Tex.) ("Because the one-party consent exception applies . . . each claim grounded in violations of either the state or federal wiretap statutes against [defendants] should be dismissed."), *report & rec. adopted*, 2021 WL 1709950 (E.D. Tex. Apr. 29, 2021); *see also In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 142-43 (3d Cir. 2015) ("Because the defendants were the intended recipients of the transmissions at issue . . . we agree that §2511(2)(d) means the defendants have done nothing unlawful under the Wiretap Act.").

In short, "reception of information voluntarily provided by another party is not an 'interception'" and gives rise to no claim. *Jeanty v. TXFM, Inc.*, 2020 WL 6483376, at *6 (E.D. Tex. Aug. 18, 2020), *report & rec. adopted*, 2020 WL 5797825 (E.D. Tex. Sept. 29, 2020) (collecting cases dismissing Wiretap Act claims where the alleged interception was voluntarily made to defendant). Following this logic, courts have dismissed such claims against hospitals for use of Facebook Pixel due to the absence of an *improper* interception. *See, e.g.*, *Murphy*, 2023 WL 7017734, at *4 (hospital was recipient of the communication; claim "cannot proceed absent sufficient allegations to show Jefferson Health intercepted communications"); *Hartley*, 2023 WL 7386060, at *1-2 (hospital "is a necessary party to any communication from a patient" about healthcare services and thus "cannot be liable to the receipt of the communication"); *Kurowski v. Rush Sys. for Health*, 659 F.Supp.3d 931, 938 (N.D. Ill.,

2023) ("Rush—and not Facebook, Google, or Bidtellect—was the intended recipient of the allegedly intercepted communications here. Rush is therefore a party to those communications and cannot be liable under the Wiretap Act for its alleged interception of them, if such an interception even occurred").

The same result is warranted here. The complaint repeatedly says the hospital was the intended recipient of the allegedly intercepted communications. *See, e.g.*, FAC ¶¶ 8, 105, 109, 112-15, 140. Consistent with precedent in this jurisdiction and elsewhere, Houston Methodist therefore cannot be liable for an "interception" under the ECPA, and this claim should be dismissed.

**B. Plaintiffs fail to properly plead an exception to the one-party consent rule.**

The complaint is clear that Houston Methodist's purpose for any alleged interception was commercial at most, not for a criminal or tortious reason that would warrant departure from the Wiretap Act's one-party consent rule.

The Act recognizes a limited exception to the general rule that a party to the communications cannot be liable for an "interception." Specifically, liability may still attach if the communication was "intercepted for the purpose of committing any criminal or tortious act."18 U.S.C.A. §2511(d). A plaintiff must allege a "criminal or tortious purpose" that is "independent" of the purported Wiretap Act violation. *See, e.g.*, *Jeanty*, 2020 WL 6483376, at *6 (dismissing claim; "focus is not upon whether the interception itself violated another law; it is upon whether the purpose for the interception–its intended use–was criminal or tortious") (cite omitted).

Plaintiffs' allegations make clear that Houston Methodist's use of Facebook Pixel was "for the purpose of marketing and advertising" and not any criminal or tortious purpose. FAC ¶146; *see also id.* ¶98 ("The purpose and end-outcome of Defendant's use of the Facebook Pixel . . . was marketing and profits."). That is insufficient to plead the crime-tort exception to the Wiretap Act's consent rule because the primary purpose of the communication was not to injure plaintiffs.

> Alleged interceptions fall within the tort or crime exception only where "the primary motivation or a determining factor in the interceptor's actions has been to injure plaintiffs tortiously," . . . [and] cannot apply where the interceptor's "purpose . . . [was] to make money."

*In re Google Inc. Gmail Litig.*, 2014 WL 1102660, at *18 n.13 (N.D. Cal. Mar. 18, 2014) (quote omitted); *see also In re DoubleClick Inc. Privacy Litig.*, 154 F. Supp. 2d 497, 519 (S.D.N.Y.2001) (dismissing claim where "purpose has plainly not been to perpetuate torts on millions of Internet users, but to make money by providing a valued service to commercial Web sites").

Plaintiffs allege that Houston Methodist's "acquisition of patient communication . . . was done for purposes of committing" violations of HIPAA, 42 U.S.C. §1320d-6, Tex. Admin. Code §133.42(a)(1)(H), Tex. Health & Safety Code §181.153, and invasion of privacy tort, FAC ¶¶170, 173-85. The allegations are mere recitations of legal elements. They are not facts that support the crime-tort exception. Absent fact allegations to support this exception, this Wiretap Act claim fails. *See, e.g.*, *Goss v. Bonner*, 2020 WL 1479131, at *3 (D. Ariz. March 6, 2020) (dismissing claim because "the only allegations that come close to alleging a criminal or tortious act are conclusory . . . . The FAC lacks any factual allegations supporting a finding that Watabe recorded the conversation to commit criminal or tortious conduct"); *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 402 F. Supp. 3d 615, 686 (N.D. Cal. 2019) ("Because defendants were participants in the recorded conversations, the recordings can violate the Act only if they were intercepted for the purpose of committing criminal or tortious acts.") (cite omitted).

And, regardless of whether the hospital's conduct allegedly violated state or federal law, plaintiffs must allege facts showing that *the purpose* of Houston Methodist's communications was to "commit a crime or a tort." *Desnick v. Am. Broad. Cos., Inc.*, 44 F.3d 1345, 1353 (7th Cir. 1995) (affirming dismissal of Wiretap Act claim; "Maybe the program as it was eventually broadcast was tortious . . . . But there is no suggestion that the defendants sent the testers into the Wisconsin

and Illinois offices for the purpose of defaming the plaintiffs," based on "plaintiffs' own account"). Likewise, plaintiffs here fail to allege facts suggesting a criminal or tortious purpose. Their Wiretap Act claim should be dismissed.

**III. Plaintiffs' Unjust Enrichment Claim Fails.**

Plaintiffs plead that Houston Methodist was unjustly enriched by receipt and disclosure of their information. FAC ¶190. (The claim is still styled as an alternative to their original implied contract claim, now dropped.) They do not plead a cognizable claim for unjust enrichment.

"To recover under unjust enrichment, a claimant must prove: (1) that valuable services were rendered or materials furnished; (2) for the person sought to be charged; (3) which services and materials were accepted by the person sought to be charged, used, and enjoyed by that person; and (4) under such circumstances as reasonably notified the person sought to be charged that the plaintiff in performing such services was expecting to be paid by the person sought to be charged." *Jupiter Enters., Inc v. Harrison*, 2002 WL 318305, at *3 (Tex. App.—Dallas 2002, no pet.) (cites omitted). Importantly, "unjust enrichment is not an independent claim for relief but rather a 'theor[y] of recovery tied to other claims for relief and relevant to damages calculations.'" *Juan Antonio Sanchez, PC v. Bank of S. Tex.*, 494 F. Supp. 3d 421, 440 (S.D. Tex. 2020) (cite omitted). Thus, if there is no other prevailing claim for relief, an unjust enrichment claim fails. *Id.*

*First*, plaintiffs' other claims suffer fatal pleading defects, so the unjust enrichment claim should be dismissed. *See Applin v. Deutsche Bk. Nat. Trust*, 2014 WL 1024006, at *7 (S.D. Tex. 2014) (an unjust enrichment is not an independent claim). Because unjust enrichment "is not a stand-alone claim, and there are no remaining claims upon which it can be based, the claim must be dismissed." *Schouest v. Medtronic, Inc.*, 92 F. Supp. 3d 606, 614 (S.D. Tex. 2015).

*Second*, even if it were a standalone claim under Texas law, plaintiffs failed to plead the elements required for the claim to survive. The claim is based on the assertion that data transmitted

through the Pixel software had "tremendous economic value." FAC ¶110. Even if true, that is not enough. Unjust enrichment claims require that a plaintiff expect to receive payment from services rendered or materials furnished. Here, the complaint nowhere alleges that plaintiffs expected to be paid for the data they claim is valuable. *See Jupiter Enters.*, 2002 WL 318305, at *3. To the contrary, the complaint alleges that they had *no* expectation their data would be used, much less that they would be compensated for it. *See, e.g.*, FAC ¶140.

Therefore, the unjust enrichment claim should be dismissed.

## CONCLUSION

For these reasons, defendant Houston Methodist respectfully requests that the Court dismiss all claims in the amended complaint with prejudice and grant it all other proper relief.

Dated: April 12, 2024

Respectfully submitted,

*/s/ R. Paul Yetter*

R. Paul Yetter
Federal Bar No. 3639
State Bar No. 22154200
pyetter@yettercoleman.com
Tracy LeRoy
Federal Bar No. 860752
State Bar No. 24062847
tleroy@yettercoleman.com
Mary E. Bracewell
Federal Bar No. 3874146
State Bar No. 24139388
mbracewell@yettercoleman.com
YETTER COLEMAN LLP
811 Main Street, Suite 4100
Houston, Texas 77002
(713) 632-8000

ATTORNEYS FOR DEFENDANT
THE METHODIST HOSPITAL

## CERTIFICATE OF SERVICE

I certify that on April 12, 2024, a copy of the foregoing was served via email or ECF service to all parties who have entered an appearance in this lawsuit.

*/s/ R. Paul Yetter*
R. Paul Yetter