**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| EDWARD SWEAT, and MARIE GARZA-SWEAT individually and on behalf of a class of similarly situated individuals, | ) | **No. 4:24-cv-00775** |
| *Plaintiffs*, | ) | **Assigned to Hon. Lee H. Rosenthal** |
| v. | ) | |
| HOUSTON METHODIST HOSPITAL, | ) | |
| *Defendant.* | ) | |

# PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ........ ii

**INTRODUCTION** ........ 1

**BACKGROUND** ........ 2

**A. Facts Specific To Plaintiffs** ........ 3

**LEGAL STANDARD** ........ 5

**ARGUMENT** ........ 5

**A. Plaintiffs State A Claim For Invasion Of Privacy Based On Intrusion Upon Seclusion** ........ 5

**B. Plaintiffs State A Claim For A Violation Of The Electronic Communications Privacy Act ("ECPA")** ........ 13

**C. Plaintiffs Sufficiently State A Claim For Unjust Enrichment** ........ 20

**CONCLUSION** ........ 21

# TABLE OF AUTHORITIES

**Case** **Page(s)**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................6

*Bell Atl. Corp. v. Twombly*,
550 US. 544 (2007)....................6

*B.K., v. Desert Care Network*,
No. 23-cv-05021, 2024 WL 1343305 (C.D. Cal. 2024) ....................12, 15, 19

*Brown v. Google LLC*,
525 F.Supp.3d 1049 (N.D. Cal. 2021) ....................19

*Cain v. Hearst Corp.*,
878 S.W.2d 577 (Tex. 1994)....................6

*Clayton v. Richards*,
47 S.W.3d 149 (Tex. App. – Texarkana 2001) ....................8

*Deteresa v. Am. Broadcasting Cos., Inc.*,
121 F.3d 460 (9th Cir. 1997) ....................17

*Doe v. Regents of University of California*,
672 F.Supp.3d 813 (N.D. Cal. 2023) ....................12

*Doe v. United States*,
83 F. Supp. 2d 833 (S.D. Tex. 200) ....................9

*Erickson v. Pardus*,
551 U.S. 89 (2007).................... 6

*Hartley v. Univ. of Chicago Med. Ctr.*,
No. 22 C 5891, 2023 WL 7386060 (N.D. Ill. 2023)....................14

*Hartley v. Univ. of Chicago Med. Ctr.*,
No. 22 C 5891, 2024 WL 1886909 (N.D. Ill. 2024)....................14, 15, 19

*Hazlewood v. Netflix, Inc.*,
No. 23-cv-1109, 2023 WL 6771506 (N.D. Tex. 2023)..................... 6, 7, 8, 9

*Heldenfels Bros., Inc. v. City of Corpus Christi*,
832 S.W.2d 39 (Tex. 1992) ...........................................................20

*In re DoubleClick Inc. Privacy Litig.*,
154 F. Supp. 2d 497 (S.D.N.Y. 2001) .......................................................16

*In re Facebook, Inc. Internet Tracking Litigation*,
956 F.3d 589 (9th Cir. 2020) ...........................................................12, 13, 14

*In re Google Inc. Gmail Litig.*,
No. 13-cv-2430, 2014 WL 1102660 (N.D. Cal. 2014) ...............................16

*In re Group Health Plan Litigation*,
No. 23-cv-267, 2023 WL 8850243 (D. Minn. 2023) ................ 12, 15, 19, 20

*In re Katrina Canal Breaches Litig.*,
495 F.3d 191 (5th Cir. 2007)...........................................................6

*In re Meta Pixel Healthcare Litig.*,
No. 22-cv-03580, 2022 WL 17869218 (N.D. Cal. 2022) ............................11

*In re: Pharmatrak*,
329 F.3d 9 (1st Cir. 2003) ...........................................................13

*James v. Dallas Police Dep't*,
No. 12-cv-457, 2013 WL 607154 (N.D. Tex. 2013)......................................6

*Jeanty v. TXFM, Inc.*,
No. 19-cv-366, 2020 WL 6483376 (E.D. Tex. 2020) .................................16

*Kane v. University of Rochester*,
No. 23-cv-6027, 2024 WL 1178340 (W.D.N.Y. 2024) ............ 15, 18, 19, 20

*Kurowski v. Rush System for Health*,
659 F.Supp.3d 931 (N.D. Ill. 2023)...........................................................14

*Kurowski v. Rush System for Health*,
No. 22-cv-5380, 2023 WL 8544084 (N.D. Ill. 2023) ....................... 14, 15, 18

*Mekhail v. North Memorial Health Care*,
No. 23-cv-00440, 2024 WL 1332260 (D. Minn. 2024) ........................15, 19

*Pope v. Garrett*,
211 S.W.2d 559 (1948) ..........................................................................20

*Sussman v. Am. Broadcasting Cos., Inc.*,
186 F.3d 1200 (9th Cir. 1999) ................................................ 16, 17, 19, 20

*Valenzuela v. Aquino*,
853 S.W.2d 512 (Tex. 1993)......................................................................6, 8

*Walters v. Blue Cross Blue Shield of Texas, Inc.*,
No. 3:21-cv-981-L, 2022 WL 902735 (N.D. Tex. 2022) ..........................6, 8

*Williams v. Google, LLC*,
No. 20-cv-685, 2021 WL 3612300 (E.D. Tex. 2021).................................11

*Wise v. Wilmoth*,
No. 16-cv-1039, 2017 WL 3267924 (N.D. Tex. 017) ..................................9

**Statutes**

18 U.S.C. § 2511(1)..........................................................................13

18 U.S.C. § 2511(2)(d) ......................................................................13

42 U.S.C. § 1320d-6 .....................................................................16, 17

Tex. Admin. Code § 133.42(a)(1)(H)......................................................17

Texas Health and Safety Code § 181.153................................................17

## INTRODUCTION

Defendant Houston Methodist Hospital ("Defendant" or "Houston Methodist") is a major provider of healthcare services in Texas, trusted with safeguarding the private health information of more than 2.23 million patients. While it is difficult to think of any category of information that is more sensitive and private than a patient's communication with their healthcare provider, in an effort to take advantage of modern online marketing tools and leverage its patient's data for its own benefit, Defendant installed tracking pixel software ("Tracking Pixels" or "Pixel") on its websites that transmitted and disclosed patients' identifiable information ("PII") and protected health information ("PHI") (collectively referred to as "Private Information" or "PII and PHI") to third-parties, including Facebook. Rather than acknowledging its misuse of its patients' Private Information and attempting to resolve their privacy violations, Defendant instead advances a number of meritless arguments including that it can freely disclose such information as long as the primary purpose is to generate profits through marketing. Defendant also further argues that: 1) the disclosure of sensitive patient data does not amount to an invasion of privacy; 2) Plaintiffs fail to state a claim under the Electronic Communications Privacy Act ("ECPA") because it did not "intend" to violate a number of federal and state laws; and 3) Plaintiffs' unjust

enrichment claim fails because Plaintiffs failed to plead the elements required to sustain the claim. (Motion to Dismiss or "Motion", Dkt. 14.)

However, the allegations in Plaintiffs' First Amended Complaint (Dkt. 6) ("FAC") are directly in line with numerous courts across the country that have rejected these same exact arguments raised by healthcare providers that installed unlawful tracking software which disclosed their patients' confidential healthcare information. As explained in further detail below, Plaintiffs have adequately alleged Defendant's privacy violations in their FAC and Defendant's Motion to Dismiss should be denied in its entirety.

## BACKGROUND

Defendant Houston Methodist is a healthcare provider in Houston, Texas that provides its services to more than 2.23 million patients. (FAC at ¶ 6.) Plaintiffs and the putative class members are individuals who have looked for or obtained medical services and/or treatment from Defendant via its Website and patient portal. (*Id.* at ¶ 7.) Unbeknownst to Plaintiffs and the other class members, Defendant embedded a Facebook Tracking Pixel (the "Tracking Pixel" or "Pixel") on its website, www.houstonmethodist.org ("Website") and MyChart patient portal. (*Id.* at ¶¶ 6, 9.) A pixel is a piece of code that tracks every detail about a website visitor's interaction with a website, including information about the pages they visit, and the text or phrases they type into any search boxes or fields on the

website. (FAC at ¶ 10.) Thus, by incorporating the Pixel on its Website, Defendant unlawfully disclosed the Private Information that Plaintiffs and the other class members provided to Defendant when they visited its Website to Facebook and other third parties alongside identifiable information such as the individual's IP address and unique Facebook ID ("FID"). (*Id.* at ¶ 9.) Such information allows third parties, like Facebook, to know that a specific patient was seeking confidential medical care for specific medical conditions such as cancer, pregnancy, dementia, or HIV. (*Id*. at ¶ 17.) Patients like Plaintiffs and the Class Members do not anticipate that their trusted healthcare provider will send Private Information obtained from their visits to its Website to unknown third parties without their consent and Plaintiffs and the other class members were unaware that their Private Information was being surreptitiously transmitted to unauthorized third parties. (*Id.* at ¶¶ 18, 19.) Critically, the disclosure of such Private Information via the Pixel contravenes the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") and various other statues which govern how health care providers and related entities must safeguard and protect Private Information. (*Id*. at ¶ 22.)

**Facts Specific To Plaintiffs**.

Plaintiffs have been patients of Defendant's hospital network since 2017 and have consistently used Defendant's Website since then. (FAC at ¶ 112.) On

numerous occasions Plaintiffs used Defendant's Website, as well as the MyChart Portal on the Website, to communicate Private Information to Defendant. (FAC at ¶¶ 113, 114.) Specifically, Plaintiffs used Defendant's Website to: communicate Private Information with their healthcare provider, search for physicians, schedule appointments and procedures, receive and discuss medical diagnoses and treatment from their healthcare providers, search for symptoms, receive and view lab results, receive and view medical records, receive and view medication changes, and view their appointment history. (*Id*. at ¶ 115.) However, because Defendant utilized a Pixel on its Website, Defendant unlawfully tracked and unlawfully transmitted Plaintiffs' Private Information identified above to Facebook and other third parties. (*Id*. at ¶ 116.) The Private Information disclosed to Facebook via the Pixel Defendant embedded on its Website was sent alongside specific identifying information, including Plaintiffs' Facebook IDs, thereby allowing their confidential communications with Defendant and the Private Information contained in those communications to be linked to their identities. (*Id*. at ¶ 117.) As Defendant's patients, Plaintiffs reasonably expected that their online communications with Defendant were solely between them and Defendant such that the communications would not be transmitted or intercepted by a third party. (*Id*. at ¶¶ 118–19.)

## LEGAL STANDARD

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint may survive a motion to dismiss for failure to state a claim, however, even if it is "improbable" that a plaintiff would be able to prove those facts; even if the possibility of recovery is extremely "remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 US. 544, 556 (2007). In deciding a Rule 12(b)(6) motion to dismiss, the "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation omitted). Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555).

## ARGUMENT

### A. Plaintiffs State A Claim For Invasion Of Privacy Based On Intrusion Upon Seclusion.

Defendant challenges Plaintiffs' claim for invasion of privacy based on intrusion upon seclusion arguing that: 1) such claims do not include a "virtual intrusion"; 2) that Plaintiffs fail to allege an intentional act by Defendant; and 3) that such intrusion would not be highly offensive to a reasonable person. None of these arguments have merit.

Texas law recognizes "three distinct injuries under the tort of invasion of privacy" including "intrusion on seclusion." *James v. Dallas Police Dep't*, No. 12-cv-457, 2013 WL 607154, at *4 (N.D. Tex. Feb. 4, 2013) (citing *Cain v. Hearst Corp.*, 878 S.W.2d 577, 578 (Tex. 1994)). The elements of an intrusion upon seclusion claim are (1) the defendant intentionally intruded on the plaintiff's solitude, seclusion, or private affairs; and (2) the intrusion would be highly offensive to a reasonable person. *Valenzuela v. Aquino*, 853 S.W.2d 512, 513 (Tex. 1993). There is no requirement that such an intrusion be of property or eavesdropping on another's conversation with the aid of wiretaps, microphones or spying, rather, a claim of intrusion upon seclusion can be sustained without a showing of a physical intrusion. *See Hazlewood v. Netflix, Inc.*, No. 23-cv-1109, 2023 WL 6771506, at *3 (N.D. Tex. Oct. 11, 2023) (citing *Walters v. Blue Cross Blue Shield of Texas, Inc.*, No. 21-cv-981, 2022 WL 902735 at *4 (N.D. Tex. 2022)); *Valenzuela*, 853 S.W.2d at 513 (describing the first element as "an intentional intrusion, *physical or otherwise*") (emphasis added).

Here, Plaintiffs plainly allege a claim for intrusion upon seclusion. Specifically, Plaintiffs allege that Defendant intentionally disclosed communications containing their Private Information, including information in the form of their private health information, to third parties including Facebook. (FAC at ¶¶ 140, 141.) Defendant, being Plaintiffs' health care provider, owed Plaintiffs a

duty to keep their Private Information confidential, but nonetheless, willfully and intentionally disclosed Plaintiffs' Private Information, thus, intentionally interfering with Plaintiffs' interest in solitude or seclusion. (FAC at ¶¶ 142, 144.) Defendant's intent to interfere with Plaintiffs' seclusion is evidenced by Defendant's intentional installation of the Pixel on its Website to track and disseminate Plaintiffs' communications to Facebook and other third parties. (*Id.* at ¶¶ 146, 147.) This unauthorized disclosure of information to Facebook, a third-party marketing giant, and other third parties, consisting of sensitive and confidential Private Information, is highly offensive to Plaintiffs given the nature of the information disclosed and considering Plaintiffs' relationship with Defendant as their healthcare provider. (*Id.* at ¶¶ 143, 144.)

Despite Plaintiffs' well-pled allegations detailing their claim for invasion of privacy, Defendant argues that intrusions do not stretch as far to include a "virtual intrusion" and requires Plaintiffs to allege facts suggesting a physical invasion. (Motion at 5, 6.) However, *Hazlewood* directly contradicts Defendant's assertion that physical invasions are required, as the court analyzed an invasion of privacy claim stemming from the collection and disclosure of a picture from the plaintiff's Instagram page that was used in a film documentary, both of which are virtual platforms. 2023 WL 6771506, at *1. The court explained that claims for intrusion upon seclusion can be sustained without a showing of a physical intrusion and held

that the plaintiff's claims were sufficiently pled. *Hazelwood*, 2023 WL 6771506, at *3 ("A claim of intrusion on seclusion can be sustained without a showing of physical intrusion" such as when the "plaintiff ha[s] photographs or videos taken without his or her consent") (citing *Walters*, 2022 WL 902735 at *4 )); *See also Clayton v. Richards*, 47 S.W.3d 149, 156 (Tex. App. – Texarkana 2001, pet. Denied); *Valenzuela* 853 S.W.2d at 513.

Furthermore, Defendant's reliance on *Walters* in an attempt to bolster its argument is not convincing as the facts at issue there are wholly inapposite. 2022 WL 902735. In *Walters*, the plaintiff alleged that Blue Cross Blue Shield violated his privacy rights by providing his medical records to counsel for the plaintiff's ex-wife who was representing her in a separate child custody proceeding. *Id*. at * 1 The medical records were intended to be submitted to the assistant judge for *in camera* review prior to being produced, however, Blue Cross Blue Shield submitted the medical records directly to counsel, which exceeded the scope of the plaintiff's consent., *Id*. at * 1. As a result, the court determined that such disclosure did not amount to a claim for intrusion upon seclusion, even though "the disclosure exceeded prior authorization." *Id.* at *4 (citing *Clayton*, 47 S.W.3d 149, 153 (Tex. App. – Texarkana 2001, pet. Denied) ("[t]he core of the tort of invasion of privacy is the offense of prying into the private domain of another, *not the publicity that may result from such prying*") (emphasis added). Therefore, *Walters* clearly

provides no guidance for this case as the defendant in *Walters* merely exceeded the scope of its authorization to disclose information to identified parties, rather than, as here, intruding on the seclusion of Plaintiffs by collecting and disclosing highly sensitive health information to unknown parties without their knowledge or consent altogether.

Nor are Defendant's other cited authorities convincing of its contention that virtual intrusions are not a permitted theory of liability. *Doe v. United States*, offers no guidance as the plaintiff did not even allege an intrusion upon seclusion claim. 83 F. Supp. 2d 833, 840-41 (S.D. Tex. 200) (distinguishing case because no intrusion upon seclusion claim was plead as "[p]laintiffs' [c]omplaint focuses solely on the government's publication of false allegations"). And in *Wise v. Wilmoth*, No. 16-cv-1039, 2017 WL 3267924 (N.D. Tex. July 3, 2017) the plaintiff's privacy claims were related to the searching of his property following a forcible detainer action, which is factually irrelevant to the unauthorized collection and disclosure of sensitive health information. 2017 WL 3267924, at *16 (N.D. Tex. July 3, 2017.) Thus, Defendant's purported physical intrusion requirement is nonetheless, "not a strict requirement." *Hazelwood*, 2023 WL 6771506, at *3 (citing *Valenzuela*, 853 S.W.2d at 513).

Defendant next argues that Plaintiffs' claims fail because they fail to allege the hospital intentionally intruded on their privacy. (Motion at 7.) Defendant's

argument is completely baseless. Plaintiffs detail throughout the entirety of their FAC Defendant's intentional actions that gave rise to their intrusion upon seclusion claim. *See e.g.s.* FAC at ¶ 7 ("[Defendant] knowingly configured and implemented a software device known as a tracking pixel to collect and transmit information from [its Website] to third parties, including confidential patient searches through the "Find a Doctor" tab and appointment scheduling page on the Website . . ."); *Id*. at ¶ 60 ("Defendant could have configured its tracking software to limit the information that it communicated to third parties, but it did not and instead intentionally selected the features and functionality of the Pixel that resulted in disclosure of its patients' Private Information"); *Id*. at ¶ 141 ("Defendant intentionally disclosed the substance and nature of those communications to third parties without the knowledge and consent of Plaintiffs and Class Members through its use of a tracking Pixel on its Website"); *Id.* at ¶ 147 ("Because Defendant intentionally and willfully incorporated the Pixels into its Website and encouraged patients to use those Website for healthcare purposes, Defendant had notice and knew that its practices would cause injury to Plaintiffs and Class Members."). Therefore, Plaintiffs clearly allege Defendant committed this intentional invasion of privacy.

Lastly, Defendant argues that Plaintiffs fail to allege an intrusion that would be highly offensive to a reasonable person and that courts have dismissed claims

similar to Plaintiffs'. (Motion at 7, 9.) Specifically, Defendant argues that its intrusion cannot be highly offensive when Plaintiffs willingly shared the information with Defendant. (Motion at 8.) However, Defendant's cited authority to support this assertion, *Williams v. Google, LLC*, relied heavily on the fact that the plaintiffs used Google's products with "*knowledge and consent* that Google may record their activities and make use of the data collected." 2021 WL 3612300, at *7 (E.D. Tex.) (emphasis added). Conversely, Plaintiffs allege throughout their FAC that Defendant intentionally disclosed their Private Information to third parties *without* their knowledge and consent, and that such *unauthorized* use of Tracking Pixels and the disclosure of Private Information is highly offensive to a reasonable person. (FAC at ¶¶ 139–143.) Furthermore, it is simply common sense that it is "highly offensive" for a healthcare provider to disclose its patients' Private Information for its own tortious use and commercial gain. This notion is supported by the numerous state and federal statutes that prohibit such conduct. *See In re Meta Pixel Healthcare Litig*., No. 22-cv-03580, 2022 WL 17869218, at *16 (N.D. Cal. Dec. 22, 2022) ("There is support for plaintiffs' position that Meta has behaved egregiously. By enacting criminal and civil statutes forbidding the disclosure of protected health information without proper authorization, Congress has made policy decisions regarding the importance of safekeeping this information"). Also, while the Fifth Circuit has not yet examined whether the

unauthorized collection and disclosure of protected health information via Pixels constitutes an invasion of privacy, courts who have had the opportunity to rule on this issue consistently conclude that similar allegations are both an intrusion and highly offensive to a reasonable person. *See In re Group Health Plan Litigation*, No. 23-cv-267, 2023 WL 8850243, at *2-3 (D. Minn. Dec. 21, 2023) (finding that a health care provider's use of a Facebook Pixel on its website constitutes an intentional intrusion and the sensitive health information shared is highly offensive to a reasonable person); *In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589, 602–06 (9th Cir. 2020) (finding Facebook's practices of surreptitious and unseen data collection of sensitive browsing information sufficient to state a claim for intrusion upon seclusion); *B.K., v. Desert Care Network*, No. 23-cv-05021, 2024 WL 1343305, at *6–*7 (C.D. Cal. Feb. 1, 2024) (allegations that the use of a Facebook pixel and CAPI in the defendants' websites and patient portal which capture and transmit data, including searches that reflect health conditions and concerns, sufficient to state a claim for intrusion upon seclusion); *Doe v. Regents of University of California*, 672 F. Supp. 3d 813, 820 (N.D. Cal. May 8, 2023) (finding plaintiff's allegations that her medical information was transmitted to Facebook through a Facebook Pixel sufficient to state a common law invasion of privacy and that "[p]ersonal medical information is understood to be among the most sensitive that could be collected about a person"). Therefore, as other courts

have held, given the nature of Plaintiffs' allegations and the sensitivity of the information, which is being secretly collected and disclosed via the Pixels Defendant has embedded on its Website, Plaintiffs sufficiently state a claim for intrusion upon seclusion.

### B. Plaintiffs State A Claim For A Violation Of The Electronic Communications Privacy Act ("ECPA").

"The Wiretap Act [ECPA] prohibits the unauthorized 'interception' of an 'electronic communication.'" *In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d at 606 (quoting 18 U.S.C. § 2511 (1)(a)–(e)). A claim under the ECPA requires Plaintiffs to establish the following elements: that Defendant (1) intentionally (2) intercepted (3) the contents of (4) Plaintiffs' electronic communications (5) by using an electronic, mechanical, or other device. *In re: Pharmatrak*, 329 F.3d 9, 18 (1st Cir. 2003).

Defendant first argues that the Plaintiffs ECPA claims fails because Defendant did not "intercept" any communication because it is a party to the communications. (Motion at 9.) Admittedly, under the ECPA there are exceptions to liability where a "party" to the communication has consented to the interceptions or the alleged interception is made by a "party" to the communication. 18 U.S.C. § 2511(2)(d). Nevertheless, the party exception does not apply where the interceptor acts "for the purpose of" committing any crime or tort in violation of state or federal law. 18 U.S.C. § 2511(2)(d); *see also In re*

*Facebook, Inc. Internet Tracking Litigation*, 956 F.3d at 608 ("[p]ermitting an entity to engage in the unauthorized duplication and forwarding of unknowing users' information would render permissible the most common methods of intrusion, allowing the exception to swallow the rule"). Therefore, Defendant's statement that "reception of information voluntarily provided by another party is not an 'interception'" is not dispositive toward Plaintiffs' ECPA claims. (Motion at 9) (internal citation omitted). In fact, while Defendant asserts that courts have followed this logic to dismiss such claims against hospitals for use of Facebook Pixels due to the absence of an "improper" interception, Defendant's own cited authority ironically involves cases in which the plaintiffs were found to have invoked the crime-tort exception and stated a claim for relief under the ECPA. (Motion at 10–11) (citing *Hartley v. Univ. of Chicago Med. Ctr.*, 2023 WL 7386060, at *1–*2 (N.D. Ill. Nov. 8, 2023) and *Kurowski v. Rush Sys. for Health*, 659 F.Supp.3d 931, 938 (N.D. Ill. 2023)); *but see* *Kurowski v. Rush Sys for Health*, No. 22-cv-5380, 2023 WL 8544084, at *3 (N.D. Ill. Dec. 11, 2023) ("The [c]ourt concludes that count one of Kurowski's proposed second amended complaint, unlike the previous versions, plausibly states a claim for relief under the [ECPA]"); *Hartley v. Univ. of Chicago Med. Ctr.*, No. 22-cv-5891, 2024 WL 1886909, at *2–*3 (N.D. Ill. Apr. 30, 2024) ("The [c]ourt finds that [p]laintiff has adequately alleged sufficient information that was disclosed to Meta to beat the Motion to

Dismiss"). Therefore, Defendant's argument that being an intended recipient of such communications shelters it from ECPA liability has been rejected by courts ruling on identical claims brought against health providers such as Defendant. Conversely, courts have routinely upheld claims for ECPA violations where, as here, the plaintiffs allege that their health care providers are disclosing sensitive health information by the use of tracking pixels. *See, e.g.*, *Kurowski*, 2023 WL 8544084, at *3; *Kane v. University of Rochester*, No. 23-cv-6027, 2024 WL 1178340, at *8 (W.D.N.Y. Mar. 19, 2024); *Mekhail v. North Memorial Health Care*, No. 23-cv-00440, 2024 WL 1332260, at *5–*6 (D. Minn. Mar. 28, 2024); *In re Group Health Plan Litigation.*, 2023 WL 8850243, at *8; *Desert Care Network*, 2024 WL 1343305 at *6; *Hartley*, 2024 WL 1886909, at *2–3.

Defendant also contends that Plaintiffs' ECPA claims fail because Defendant's purpose for the alleged interception is commercial at most, and not criminal or tortious. (Motion at 11.) Simply put, Defendant argues that because it generates profits from the illegal disclosure of its patients' Private Information it cannot face liability under the ECPA. Such an argument justifying its improper handling of its patients' health information should not carry persuasive weight, especially when the authority Defendant cites in support of its position is dissimilar to the case at hand.

Defendant relies on *Jeanty v. TXFM, Inc.*, No. 19-cv-366, 2020 WL 6483376 (E.D. Tex. Aug. 18, 2020) to support its assertion that Plaintiffs' criminal or tortious purpose must be independent of the ECPA violation. (Motion at 11). However, in *Jeanty* the court simply rejected the plaintiff's alleged criminal or tortious use as it could not, "in good conscience, be considered a 'criminal or tortious purpose' by [d]efendants." *Id.* In addition, Defendant cites *In re Google Inc. Gmail Litig.*, No. 13-cv-2430, 2014 WL 1102660 (N.D. Cal. Mar. 18, 2014) and *In re DoubleClick Inc. Privacy Litig.*, 154 F. Supp. 2d 497 (S.D.N.Y. 2001) to bolster its argument that applying the crime-tort exception is inappropriate where a defendant's motivation is commercial. However, neither case contemplates whether the crime-tort exception can be invoked for the disclosure of *sensitive private health information*. This factual difference, as explained in more detail below, is critical because the disclosure and sale of health information is in itself a criminal act. (*See* 42 U.S.C. § 1320d-6) (making it a *criminal violation* for a person to "disclose[] individually identifiable health information to another person" and enhancing the penalty for the violation when the "offense is committed with intent to *sell, transfer or use individually identifiable health information for commercial advantage, personal gain*") (emphasis added).

Nevertheless, other courts have held that a concurrent "lawful purpose," such as marketing, does not "sanitize" a wiretap also "made for an illegitimate

purpose." *Sussman v. Am. Broadcasting Cos., Inc.*, 186 F.3d 1200, 1202 (9th Cir. 1999). Illegal purposes may include invasion of privacy, defrauding, and committing unfair business practices. *Deteresa v. Am. Broadcasting Cos., Inc.*, 121 F.3d 460, 467 n.4 (9th Cir. 1997) ("For this [ECPA] claim to survive . . . [plaintiff] ha[s] to . . . show that [defendant] taped the conversation for the purpose of violating Cal. Penal Code § 632, for the purpose of invading her privacy, for the purpose of defrauding her, or for the purpose of committing unfair business practices"). Accordingly, Plaintiffs allege that they were unaware of Defendant's extensive tracking of their private communications containing Private Information and that this surreptitious tracking was done with criminal and tortious intent in violation of various laws. (FAC at ¶¶ 169–184.) Specifically, Plaintiffs allege that Defendant's conduct is a criminal violation of HIPAA, 42 U.S.C. § 1320d-6; violation of Tex. Admin Code § 133.42(a)(1)(H); violation of Texas Health and Safety Code § 181.153; invasion of privacy; and other state and federal laws that may apply. (FAC at ¶ 173.) While Defendant contends that Plaintiffs merely recite legal elements of these claims (Motion at 12), Plaintiffs' FAC goes well beyond simply parroting various criminal and tortious statutes and pleads numerous factual allegations sufficient to allege such claims. For example, 42 U.S.C. § 1320d-6 makes it a criminal violation for a person to "disclose[] individually identifiable health information to another person . . . without authorization" from the patient

and allows an enhanced penalty when the offense is committed for commercial advantage. (FAC at ¶¶ 174, 175.) Plaintiffs support their allegation that Defendant is in violation of this statue where they allege throughout their entire FAC that Defendant intentionally implemented Pixels on its Website to collect and transmit Private Information to third parties and did so with various criminal and tortious intents *including* to generate profits. (*Id*. at ¶¶ 7, 9, 15, 17, 22–24, 61, 70–86, 98, 120, 170–184.) Plaintiffs also support their allegations by providing proof that the Pixel existed on Defendant's Website by citing to an independent third party investigation that was conducted by the consumer privacy advocacy group The Markup. (*Id*. at ¶¶ 53–58.) These allegations are also sufficient to support the other criminal and tortious violations Plaintiffs assert which enables them to invoke the crime-tort exception to the ECPA. Therefore, Defendant's argument that Plaintiffs fail to support their claims with facts are unfounded.

Accordingly, Plaintiffs' allegations sufficiently invoke the crime-tort exception as other courts have ruled in similar cases dealing with healthcare providers utilizing Pixels on their websites to collect and disclose sensitive information. *See e.g. Kurowski*, 2023 WL 8544084, at *2–*3 (finding that the plaintiff plausibly stated an ECPA claim where they invoked the crime-tort exception by alleging that the defendant's use of tracking pixels violated HIPAA); *Kane*, 2024 WL 1178340, at *7–*8 (finding that the plaintiffs invoked the crime-

tort exception by alleging that the defendant used tracking pixels to collect and disclose health information); *Mekhail*, 2024 WL 1332260, at *5 (allegations that tracking pixels allowed Facebook to access the plaintiff's private health data with the purpose of monetizing that data were sufficient to plead violations of law and HIPAA to invoke the crime-tort exception); *In re Group Health Plan Litigation.*, 2023 WL 8850243, at *8 (plaintiff's claims for invasion of privacy and violations of state law sufficient to invoke the crime-tort exception); *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1067 (N.D. Cal. 2021) (concluding that the crime-tort exception applied where the plaintiff alleged that "Google's association of their data with preexisting user profiles violated state law, including CDAFA, intrusion upon seclusion, and invasion of privacy"); *Desert Care Network*, 2024 WL 1343305 at *6 (plaintiff's allegations that health provider intercepted and disclosed health information via tracking pixels in violation of various state and federal laws sufficient to invoke crime-tort exception); *Hartley*, 2024 WL 1886909, at *2-3 (plaintiff's allegations that health information was disclosed to Meta via pixel sufficient for ECPA claim to survive motion to dismiss.). Thus, Plaintiffs have alleged that Defendant's conduct was intended to be criminal or tortious and the *further use* of Plaintiffs' Private Information outside the crimes or torts alleged, whether it be for marketing or to target specific new customers, is irrelevant to the inquiry regarding whether the party exception applies. *See Sussman*, 186 F.3d 1202

("[t]he existence of a lawful purpose does not sanitize an interception that was also made for an illegitimate purpose").

Finally, even if this court were to consider Defendant's purported marketing intent defense (it should not), other districts have previously ruled that knowingly transmitting Private Information for the purpose of financial gain is itself sufficient to invoke the crime-tort exception. *See e.g. Kane*, 2024 WL 1178340, at *7 (finding the plaintiff's allegations that the defendant disclosed health information to enhance its marketing efforts sufficient to allege the tort-crime exception applies); *In re Group Health Plan Litigation.*, 2023 WL 8850243, at *8 (allowing ECPA claim to proceed under tort-crime exception where the defendant allegedly used pixels to enhance marketing efforts.) Accordingly, Defendant's Motion to Dismiss Plaintiffs' ECPA claims should be denied.

**C. Plaintiffs Sufficiently State A Claim For Unjust Enrichment.**

Under Texas law an unjust enrichment claim requires the showing that one party "has obtained a benefit from another by fraud, duress or the taking of an undue advantage." *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992) (citing *Pope v. Garrett*, 211 S.W.2d 559 (1948)). Defendant argues that Plaintiffs' unjust enrichment claim must be dismissed because it cannot stand on its own and because Plaintiffs fail to plead the elements required for the claim to survive. (Motion at 13, 14.) Defendant is wrong.

To start, Defendant's argument that Plaintiffs' unjust enrichment claims fail because their other claims fail is unavailing because Plaintiffs detail throughout their FAC and this brief several prevailing claims for relief that should be allowed to proceed. Further, in Plaintiffs' FAC they allege that they conferred a monetary benefit upon Defendant in the form of sensitive medical information that Defendant collected from Plaintiffs "under the guise of keeping their information private." (FAC at ¶ 190.) They also alleged that Defendant collected, used, and disclosed this information for its own gain through its use of Pixels, "including for advertisement purposes, sales, or trade for valuable services from third parties" including Facebook. (*Id.*) Plaintiffs further allege that they "suffered *actual damages* in an amount equal to the value of data that Defendant disclosed to third parties . . . through its use of a tracking Pixel." (*Id.* at ¶ 192) (emphasis added). Additionally, Plaintiffs allege that they were deprived of the benefit of the bargain given their relationship with Defendant as patients. (*Id.* at ¶¶ 30, 193.) These facts are alone sufficient to establish each element of an unjust enrichment claim, and Defendant's Motion with respect to this claim should be denied.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs ask that this Court deny Defendant's Motion to Dismiss in its entirety.

Respectfully submitted,

By: /s/ *Eugene Y. Turin*

Paul O. Wickes
State Bar No. 00788663
**WICKES LAW, PLLC**
5600 Tennyson Parkway, Ste. 205
Plano, Texas 75024
(972) 473-6900
(972) 767-3225 FAX
pwickes@wickeslaw.com

Eugene Y. Turin (S.D. Tex. # 3874901)
Jordan R. Frysinger (*S.D. Tex. Admission forthcoming*)
Illinois Bar No. 6335897
MCGUIRE LAW, P.C.
55 W. Wacker Drive, 9th Floor
Chicago, IL 60601
Tel: (312) 893-7002
eturin@mcgpc.com
jfrysinger@mcgpc.com

ATTORNEYS FOR PLAINTIFFS EDWARD SWEAT and MARIE GARZA SWEAT, individually and on behalf of similarly situated individuals (the Putative Class)

## CERTIFICATE OF SERVICE

I certify that on May 10, 2024, a copy of the foregoing was served via email or ECF service to all parties who have entered an appearance in the lawsuit.

/s/ *Eugene Y. Turin*