IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| EDWARD SWEAT and MARIE GARZA SWEAT, individually and on behalf of a class of similarly situated individuals, | § | |
| | § | |
| Plaintiffs, | § | |
| v. | § | Civil Action No. 24-CV-775 |
| | § | |
| HOUSTON METHODIST HOSPITAL, | § | |
| | § | |
| Defendant. | § | |
| | § | Assigned to: Hon. Lee Rosenthal |

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS FIRST AMENDED COMPLAINT**

R. Paul Yetter
Federal Bar No. 3639
State Bar No. 22154200
pyetter@yettercoleman.com
Tracy N. LeRoy
Federal Bar No. 860752
State Bar No. 24062847
tleroy@yettercoleman.com
Mary E. Bracewell
Federal Bar No. 3874146
State Bar No. 24139388
mbracewell@yettercoleman.com
YETTER COLEMAN LLP
811 Main Street, Suite 4100
Houston, Texas 77002
(713) 632-8000

ATTORNEYS FOR DEFENDANT
THE METHODIST HOSPITAL

May 17, 2024

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ........ ii

SUMMARY OF ARGUMENT AND STATEMENT OF ISSUES ........ 1

STANDARD OF REVIEW ........ 1

NATURE AND STAGE OF PROCEEDING ........ 2

ARGUMENT AND AUTHORITIES ........ 2

I. Plaintiffs Do Not Adequately Allege an Invasion of Privacy Tort. ........ 2

II. The ECPA Claim Fails. ........ 4

A. Plaintiffs do not plausibly plead a criminal or tortious purpose. ........ 5

B. Speculative allegations about the Meta Pixel are deficient. ........ 6

III. Plaintiffs' Unjust Enrichment Claim Fails. ........ 10

CONCLUSION ........ 11

CERTIFICATE OF SERVICE ........ 12

## TABLE OF AUTHORITIES

Cases Page(s)

*Applin v. Deutsche Bk. Nat. Trust*,
2014 WL 1024006 (S.D. Tex. 2014) ........ 11

*B.K. v. Desert Care Network*,
2024 WL 1343305 (C.D. Cal. Feb. 1, 2024) ........ 8

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........ 1

*Caro v. Weintraub*,
618 F.3d 94 (2d Cir. 2010) ........ 5

*Hartley v. Univ. of Chicago Med. Ctr*,
2024 WL 1886909 (N.D. Ill. Apr. 30, 2024) ........ 8

*Hazelwood v. Netflix, Inc.*,
2023 WL 6771506 (N.D. Tex. Oct. 11, 2023) ........ 2, 3

*Heldenfels Bros., Inc. v. City of Corpus Christi*,
832 S.W.2d 39 (Tex. 1992) ........ 10

*In re Grp. Health Plan Litig.*,
2023 WL 8850243 (D. Minn. Dec. 21, 2023) ........ 9

*Jeanty v. TXFM, Inc.*,
2020 WL 6483376 (E.D. Tex. Aug. 18, 2020), *report & rec. adopted*, 2020 WL 5797825 (E.D. Tex. Sept. 29, 2020) ........ 5

*Jupiter Enters., Inc v. Harrison*,
2002 WL 318305 (Tex. App.—Dallas 2002) ........ 11

*Kane v. University of Rochester*,
2024 WL 1178340 (W.D.N.Y. Mar. 19, 2024) ........ 9

*Kurowski v. Rush Sys. for Health*,
2023 WL 8544084 (N.D. Ill. Dec. 11, 2023) ........ 8

*Mekhail v. N. Mem'l Health Care*,
2024 WL 1332260 (D. Minn. Mar. 28, 2024) ........ 9

*Murphy v. Thomas Jefferson Univ. Hosps., Inc.*,
2023 WL 7017734 (E.D. Pa. Oct. 10, 2023)........................................................ 4, 7, 8

*Santoro v. Tower Health*,
2024 WL 1773371 (E.D. Pa. Apr. 24, 2024)........................................................ 6, 7, 8

*Schouest v. Medtronic, Inc.*,
92 F. Supp. 3d 606 (S.D. Tex. 2015)........................................................................ 11

*Smocks v. Preston Heights Apartment,*
2024 WL 38284 (E.D. Tex. Jan. 3, 2024)..................................................................... 3

*Stark v. United States*,
2017 WL 1185278 (N.D. Tex. Mar. 6, 2017), *report & rec. adopted*, 2017 WL 1184227 (N.D. Tex. Mar. 29, 2017)......................................................................................... 5

*Summerlin v. Barrow*,
2018 WL 1322172 (N.D. Tex. Mar. 13, 2018)................................................................ 3

*Sussman v. Am. Broad. Companies, Inc.*,
186 F.3d 1200 (9th Cir. 1999)...................................................................................... 5

*Torch Liquidating Trust ex rel. Bridge Assocs. L.L.C. v. Stockstill*,
561 F.3d 377 (5th Cir. 2009)........................................................................................ 1

*Valenzuela v. Aquino*,
853 S.W.2d 512 (Tex. 1993)......................................................................................... 2

*Walters v. Blue Cross & Blue Shield of Tex., Inc.*,
2022 WL 902735 (N.D. Tex. March 28, 2022)............................................................... 3

*Williams v. Google, LLC*,
2021 WL 3612300 (E.D. Tex. July 16, 2021), *report & rec. adopted*, 2021 WL 3603769 (E.D. Tex. Aug. 13, 2021)......................................................................................... 4

Statutes

18 U.S.C. § 2511................................................................................................. 4, 6, 9

42 U.S.C. § 1320d-6(a)(3)............................................................................................ 6

Regulations

45 C.F.R. § 160.103............................................................................................. 6, 7

Defendant The Methodist Hospital, d/b/a Houston Methodist Hospital respectfully files this reply brief in further support of its motion to dismiss the amended complaint in its entirety.

## SUMMARY OF ARGUMENT AND STATEMENT OF ISSUES

Plaintiffs brought a putative class action claiming that Houston Methodist's alleged prior use of a tracking tool on its website violated its patients' privacy. The hospital operates a website to better serve its patients, including by offering information about its doctors, facilitating appointment requests, and operating a patient portal. The amended complaint relies on conclusory and speculative allegations about how plaintiffs used the website, what information was transmitted to third parties, and whether Houston Methodist even knew, much less intended, such a transmission. Plaintiffs fail to plead a single cognizable claim.

- The invasion of privacy claim fails because plaintiffs cannot show an intrusion under Texas law;
- The wiretap claim fails because plaintiffs do not adequately plead, and cannot establish, that Houston Methodist acted with a criminal or tortious purpose; and
- The unjust enrichment claim is nothing more than a bare recitation of the required elements, which is deficient.

As explained further below, the amended complaint should be dismissed in its entirety.

## STANDARD OF REVIEW

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Claims should be dismissed if the allegations do not "nudge[] [the plaintiff's] claims across the line from conceivable to plausible." *Id.* Dismissal is proper "if the complaint lacks an allegation regarding a required element necessary to obtain relief." *Torch Liquidating Trust ex rel. Bridge Assocs. L.L.C. v. Stockstill*, 561 F.3d 377, 384 (5th Cir. 2009) (cite omitted). For the reasons set forth below, plaintiffs' claims should be dismissed.

## NATURE AND STAGE OF PROCEEDING

As set forth in Houston Methodist's motion, plaintiffs filed suit in state court in Harris County, Texas. Houston Methodist was served on February 7, 2024 and timely removed the case on March 4, 2024. *See* ECF No. 1. The case was assigned to the Hon. David Hittner. Houston Methodist moved to dismiss the petition on March 11, 2024. *See* ECF No. 4. On March 29, 2024, plaintiffs filed an amended complaint. *See* ECF No. 6. On April 2, 2024, the Court denied Houston Methodist's motion to dismiss as moot given the filing of a new complaint. *See* ECF No. 8 ("Compl."). Judge Hittner then recused himself, and the case was re-assigned to the Hon. Sim Lake. *See* ECF Nos. 9, 10. On April 12, 2024, Houston Methodist moved to dismiss the amended complaint and to stay discovery. *See* ECF No. 14. Judge Lake held a hearing on April 19, 2024, during which he granted the motion to stay discovery and recused himself. *See* ECF. No. 17. The case was re-assigned to this Court. *See* ECF. No. 18. On May 10, 2024, plaintiffs filed an opposition to the motion to dismiss. *See* ECF No. 23 ("Opp. Br.").

## ARGUMENT AND AUTHORITIES

### I. Plaintiffs Do Not Adequately Allege an Invasion of Privacy Tort.

Plaintiffs allege a claim for invasion of privacy based on an intrusion into their seclusion. Compl. ¶¶138-53. As noted in the motion, while an intrusion need not be physical, plaintiffs ignore that Texas courts have rejected the exact kind of intrusion alleged here. The parties agree on the relevant elements, *i.e.*, that the tort requires "an intentional intrusion, physically or otherwise, upon another's solitude, seclusion, or private affairs or concerns," which "would be highly offensive to a reasonable person." *Valenzuela v. Aquino*, 853 S.W.2d 512, 513 (Tex. 1993). But plaintiffs track the case law selectively about what non-physical intrusions suffice.

Plaintiffs rely heavily on *Hazlewood v. Netflix, Inc.*, 2023 WL 6771506 (N.D. Tex. Oct. 11, 2023), where the court addressed a non-physical intrusion. There, the plaintiff alleged that

Netflix had intruded onto his private Instagram account and taken his private photograph for public use. The court found that taking a photograph from a private digital domain was similar to claims involving taking photographs or videos without a plaintiff's consent. *Id.* at *3 (citing cases). The plaintiff adequately alleged that Netflix's conduct was outrageous—*i.e.*, its publicly distributing a photograph of the plaintiff holding a hatchet in a true-crime documentary about a murder, such that individuals who saw the documentary believed plaintiff to be a suspect or murderer. *Id.* In other words, *Hazlewood* allowed a claim based upon an outrageous digital intrusion into private online property (i.e., an online account).

*Hazlewood* has no application here. Courts have rejected virtual intrusions where a virtual "intrusion" was precipitated by a plaintiff's own disclosure. For example, in *Walters v. Blue Cross & Blue Shield of Tex., Inc*., 2022 WL 902735 (N.D. Tex. March 28, 2022), the defendant allegedly emailed plaintiff's medical records to opposing counsel in a custody dispute, rather than to the court for in-camera review. The court dismissed the idea that "an act of intrusion" occurred based upon this unauthorized disclosure of medical records. The case law "does not support a contorted view that disclosure of medical records to a third party qualifies as an act of intrusion, even though the disclosure exceeded prior authorization." *Id.* at *4; *see also Smocks v. Preston Heights Apt.,* 2024 WL 38284, at *4 (E.D. Tex. Jan. 3, 2024) (describing that an act of intrusion "requires more than the disclosure of information to a third party"); *Summerlin v. Barrow*, 2018 WL 1322172, at *3 (N.D. Tex. Mar. 13, 2018) (dismissing seclusion claim where "complaint reflects that defendant was a recipient of the letter," so there was "no personal intrusion into plaintiff's private affairs").

Here, plaintiffs allege they transmitted their own information to Houston Methodist, thus making it a proper and intended recipient of the information. *See, e.g.*, Compl. ¶11. They cannot adequately plead an intrusion into their medical information given that any such information was

voluntarily disclosed to the hospital. In addition, their actions similarly undermine any suggestion that the conduct, even if it were an intrusion, would be "highly offensive to a reasonable person." *Williams v. Google, LLC*, 2021 WL 3612300, at *7 (E.D. Tex.), *adopted*, 2021 WL 3603769 (E.D. Tex. Aug. 13, 2021).

Furthermore, plaintiffs offer only conclusory allegations that the hospital acted intentionally such that its conduct could be "highly offensive to a reasonable person." And for good reason—plaintiffs have no specific basis to allege that Houston Methodist, which plaintiffs concede is a leading and trusted non-profit healthcare provider, intentionally sought to transmit its patients' private personal health information to third parties. Compl. ¶3, ¶7. *See, e.g.*, *Murphy v. Thomas Jefferson Univ. Hosps., Inc.*, 2023 WL 7017734, at *6 (E.D. Pa. Oct. 10, 2023) ("without more information about the contents of Plaintiffs' communications . . . allegations that Jefferson Health's conduct was 'highly offensive' similarly fall short of the mark").

In short, plaintiffs do not adequately allege a seclusion claim, and it should be dismissed.

## II. The ECPA Claim Fails.

Plaintiffs allege that Houston Methodist violated the Electronic Communications Privacy Act ("Wiretap Act") by intercepting plaintiffs' communications with the hospital's website. They admit, Opp. Br. at 13, as they must, that it is generally not unlawful to intercept a communication to which you are a party, and that they must allege that Houston Methodist acted "for the purpose of" committing a crime or tort. *See* 18 U.S.C. § 2511(2)(d). Plaintiffs make no such allegations, however, instead making it clear that they allege that the hospital acted with a commercial purpose. They further elide case law narrowly construing the crime-tort exception and oversimplify how courts have addressed the Meta Pixel. They have failed to allege facts supporting the crime-tort exception, and this claim should be dismissed.

**A. Plaintiffs do not plausibly plead a criminal or tortious purpose.**

Plaintiffs try to distinguish case law that the crime-tort exception is "construed narrowly." *Jeanty v. TXFM, Inc.*, 2020 WL 6483376, at *6 (E.D. Tex.), *adopted*, 2020 WL 5797825 (E.D. Tex. Sept. 29, 2020) (cleaned up). The exception applies only when an interception occurs "for the purpose of a tortious or criminal act that is *independent* of the intentional act of recording." *Id*. There, the plaintiff alleged employees of a retail store held and interrogated him about suspected fraud, while recording it, before turning him over to authorities. The court found that the crime-tort exception to the recorded interrogation did not apply because the defendants' purpose in detaining and recording the interrogation was to "prosecut[e] Plaintiff" for a suspected fraud. *Id.*

In other words, it is not enough that a party's conduct in securing an interception is allegedly tortious or criminal (e.g., false imprisonment). The intercepting party must have an independently tortious or criminal purpose. *Id.*

Other courts have applied a similar rule, finding that the crime-tort exception does not apply so long as the party intercepting the communication had a legitimate purpose. The exception "is confined to instances where the recording party intends to use the recording to harm or injure a recorded party, such as to blackmail, threaten, or publicly embarrass the recorded party" *Stark v. United States*, 2017 WL 1185278, at *4 (N.D. Tex.), *adopted*, 2017 WL 1184227 (N.D. Tex. Mar. 29, 2017) (quotes omitted). "At the time of the recording the offender must intend to use the recording to commit a criminal or tortious act." *Caro v. Weintraub*, 618 F.3d 94, 99 (2d Cir. 2010). *See also Sussman v. Am. Broad. Cos., Inc.*, 186 F.3d 1200, 1203 (9th Cir. 1999) ("Although ABC's taping may well have been a tortious invasion of privacy under state law, plaintiffs have produced no probative evidence that ABC had an illegal or tortious purpose when it made the tape.").

Plaintiffs cannot meet this standard of an independent or solely illegitimate purpose. They do not plausibly allege that Houston Methodist had a criminal or tortious purpose in installing the

Meta Pixel software tool because plaintiffs allege that the hospital's purpose was commercial. For example, they elsewhere allege that Houston Methodist installed the Meta Pixel "for advertisement purposes" and to obtain "valuable services from third parties" including Facebook. Compl. ¶190. Plaintiffs' allegations about the hospital's commercial purpose are fatal to their wiretap claim.

**B. Speculative allegations about the Meta Pixel are deficient.**

Plaintiffs urge the Court to follow selectively collected cases that involve wiretap claims from healthcare providers' use of the Meta Pixel. They argue that since other Pixel-related Wiretap Act claims have survived dismissal, their claim should, too. But they ignore cases that dismissed such claims based on similar allegations even while they rely heavily on distinguishable cases.

For example, plaintiffs do not address *Santoro v. Tower Health*, 2024 WL 1773371, at *4 (E.D. Pa. Apr. 24, 2024), where the court dismissed with prejudice a Wiretap Act claim based on a healthcare provider's use of the Meta Pixel. Since the provider was party to the communications with its website, the court considered the crime-tort exception, that is, whether the provider had "intercepted the communications 'for the purpose of committing any criminal or tortious act.'" *Id.* at *3 (quoting § 2511(2)(d)). Plaintiff argued that the provider "collected data for the purpose of violating the Health Insurance Portability & Accountability Act, which in turn makes it a crime for a person to 'knowingly and in violation of this part . . . disclos[e] individually identifiable health information to another person.'" *Id.* at *3 (quoting 42 U.S.C. §1320d-6(a)(3))*; see also id.* (defining "individually identifiable health information" under HIPAA as information "(1) [i] created or received by a health care provider . . . and (2) [r]elates to the past, present, or future physical or mental health or condition of an individual; the provision of health care to an individual . . . and (i) [t]hat identifies the individual; or (ii) [w]ith respect to which there is a reasonable basis to believe the information can be used to identify the individual." (quoting 45 C.F.R. §160.103)).

The court in *Santoro* found plaintiff's allegations to be deficient. "It is interesting to hypothesize about different circumstances that could get the theory into discovery, but the law requires more than hypotheticals at the pleading stage." *Id.* at *4. The plaintiff was silent on how he used defendant's website and how his individually identifiable health information had been intercepted. *Id.* (the complaint "tells us nothing about the specific pages Mr. Santoro clicked on, his medical condition, or his history of medical care" such that the court could not determine "what information Mr. Santoro actually communicated to Tower Health via his web browsing, and thus cannot tell whether that information might be covered by HIPAA").

Here, too, plaintiffs summarily assert that Houston Methodist's conduct violated HIPAA by disclosing individually identifiable health information. Compl. ¶176. But they are silent on the particulars, with no allegation about what information they transmitted to the hospital nor what it allegedly transmitted to Meta. Plaintiffs offer only a general description of their use of Houston Methodist's website between 2017 and present, generally describing a variety of actions that they took without specifying any particular action or communication that implicates their individually identifiable health information. Compl. ¶115. "Plaintiffs do not allege, for example, that any specific test results, diagnoses, or sensitive messages were intercepted or improperly disclosed." *Murphy*, 2023 WL 7017734, at *3.

This absence of detail is telling and dispositive. Having amended their complaint, plaintiffs provide *no* example of how they interacted with the hospital's website in a way that implicated their individually identifiable health information. "The specifics are essential to convert a case like this from a law-school hypothetical to an actionable dispute." *Santoro*, 2024 WL 1773371, at *1. Without specifics, plaintiffs' Wiretap Act claim must be dismissed, as they "fail to allege facts showing that the substantive contents of their . . . communications have ever been transmitted to

Meta." *Murphy*, 2023 WL 7017734, at *3. *See also Santoro*, 2024 WL 1773371, at *1 (dismissing the action with prejudice given prior opportunities to amend, because operative complaint still fails to "explain the nature of the personal information allegedly captured by the Meta Pixel").

Furthermore, cases cited by plaintiffs are distinguishable. For example, in *Kurowski*, the health care system allegedly transmitted "the name and location of [plaintiff's] personal physician, as well as her physician's specialty." *Kurowski v. Rush Sys. for Health*, 2023 WL 8544084, at *3 (N.D. Ill. Dec. 11, 2023). This claim was not speculative: the plaintiff alleged that this personally identifying information "was, in turn, used by at least Facebook to target her with particular advertising associated with her particular health conditions." *Id.* In *Desert Care*, plaintiffs identified specific actions they had taken through their healthcare provider's website, including communicating with breast cancer specialists and handling treatment for a spouse's diabetes. *B.K. v. Desert Care Network*, 2024 WL 1343305, at *2 (C.D. Cal. Feb. 1, 2024). Plaintiffs also offered non-speculative allegations that this same information was transmitted to Meta based upon plaintiffs' receipt of "advertisements relating to breast cancer and to hysterectomies" and other targeted Facebook ads. *Id.* Similarly, in *Hartley*, the plaintiff filed an amended complaint alleging that she had sought "specific medical specialists," "prescriptions of various medications," and "information about sexually transmitted diseases." *Hartley v. Univ. of Chicago Med. Ctr*, 2024 WL 1886909, at *2 (N.D. Ill. Apr. 30, 2024). She also had a non-speculative claim that this information was transmitted to Facebook: she alleged receipt of "advertisements for medications that were relevant to specific conditions for which she was being treated." *Id.*

In contrast, plaintiffs here are silent as to any specific information that they provided to the hospital's website or that it allegedly transmitted to Meta. This omission is meaningful, given the number of ways that patients can use the website without providing or transmitting *any* medical

information. For example, a person who clicked the "request appointment" button could request a phone call from Houston Methodist to schedule an appointment offline or review public-facing information and blog posts about its public health campaigns. Plaintiffs fail to identify any individually identifiable health information that they provided to Houston Methodist beyond the conclusory assertion that they did so. That is not enough.

Finally, the other cases cited by plaintiffs simply apply a different, and looser, standard for the crime-tort exception that the Court should decline to adopt here. For example, the court in *Mekhail* acknowledged that it was diverging from the weight of the case law in its treatment of the crime-tort exception. *Mekhail v. N. Mem'l Health Care*, 2024 WL 1332260, at *3, *5 & n.4 (D. Minn. Mar. 28, 2024) (distinguishing case law from other circuits and district courts). *See also In re Grp. Health Plan Litig.,* 2023 WL 8850243, at *8 (D. Minn. Dec. 21, 2023) ("[T]his district has not found that the crime-tort exception to the Wiretap Act is inapplicable where the defendant's primary motivation was to make money."). In *Kane*, the court set forth the governing Second Circuit standard but failed to address the defendant's purpose in transmitting the information, focusing on allegations as to the information disclosed rather than the purpose for it. *Kane v. University of Rochester*, 2024 WL 1178340, at *5-*6 (W.D.N.Y. Mar. 19, 2024).

These cases' treatment of the crime-tort exception would essentially do away with it for healthcare providers, skipping entirely over the purpose of the transmission whenever individually identifiable health information is allegedly implicated. That interpretation is inconsistent with the clear language of the statute and should not be accepted here. *See* 18 U.S.C. § 2511(2)(d) (requiring party act "for the purpose of" committing a crime or tort).

Because plaintiffs rely on conclusory and vague allegations about the information allegedly intercepted, and because they do not plausibly allege that Houston Methodist had a criminal or tortious purpose, the Wiretap Act claim should be dismissed.

### III. Plaintiffs' Unjust Enrichment Claim Fails.

Plaintiffs cite to a single case that broadly discusses unjust enrichment. They ignore the well-established elements for such a claim and never address how their conclusory assertions satisfy those elements. They also contend that, because other claims should survive, their unjust enrichment claim survives too. But their allegations are insufficient regardless of whether unjust enrichment is treated as a theory of recovery or standalone claim. The claim should be dismissed.

Plaintiffs cite only a single case for a general statement about unjust enrichment. Opp. Br. at 20 (citing *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992)). They do not suggest the case has any particular relevance, and it involved substantially different facts involving a subcontractor's right of recovery. Nonetheless, it is relevant—and overlooked by plaintiffs—that the court there found that the plaintiff was *not* entitled to recover on a theory of unjust enrichment. "Unjust enrichment is not a proper remedy merely because it might appear expedient or generally fair that some recompense be afforded for an unfortunate loss to the claimant, or because the benefits to the person sought to be charged amount to a windfall." *Id.* at 42 (cleaned up). In other words, unjust enrichment is cabined to claimants who satisfy the elements for unjust enrichment which, as *Heldenfels* underscores, plaintiffs have failed to do here.

Plaintiffs do not acknowledge the elements required for an unjust enrichment claim nor grapple with how their pleadings fall short. As noted in the motion, "[t]o recover under unjust enrichment, a claimant must prove: (1) that valuable services were rendered or materials furnished; (2) for the person sought to be charged; (3) which services and materials were accepted by the person sought to be charged, used, and enjoyed by that person; and (4) under such circumstances

as reasonably notified the person sought to be charged that the plaintiff in performing such services was expecting to be paid by the person sought to be charged." *Jupiter Enters., Inc v. Harrison*, 2002 WL 318305, at *3 (Tex. App.—Dallas 2002) (cites omitted). Plaintiffs summarily assert that they "conferred a monetary benefit upon Defendant in the form of sensitive medical information" and "suffered *actual damages*" equal to the data's value. Opp Br. at 21 (orig. emph.). Their assertion that sensitive medical information is a "valuable service . . . or material[]" is unsupported and conclusory. Furthermore, they do not allege that they expected to be paid for the data. Nor could they allege they had such expectation, since they otherwise allege that their data was shared without their knowledge or consent. *See* Compl. ¶140; *Jupiter Enters.,* 2002 WL 318305, at *3.

Because plaintiffs' other claims suffer fatal pleading defects, the unjust enrichment claim should be dismissed. *See Applin v. Deutsche Bk. Nat. Trust*, 2014 WL 1024006, at *7 (S.D. Tex. 2014) (unjust enrichment is not an independent claim); *Schouest v. Medtronic, Inc.*, 92 F. Supp. 3d 606, 614 (S.D. Tex. 2015) (same). Furthermore, even if it were a standalone claim under Texas law, plaintiffs have failed to plead the elements required for the claim to survive.

## CONCLUSION

For these reasons, defendant Houston Methodist respectfully requests that the Court dismiss all claims in the amended complaint with prejudice and grant it all other proper relief.

Dated: May 17, 2024

Respectfully submitted,

*/s/ R. Paul Yetter*
R. Paul Yetter
Federal Bar No. 3639
State Bar No. 22154200
pyetter@yettercoleman.com
Tracy LeRoy
Federal Bar No. 860752
State Bar No. 24062847
tleroy@yettercoleman.com
Mary E. Bracewell
Federal Bar No. 3874146
State Bar No. 24139388
mbracewell@yettercoleman.com
YETTER COLEMAN LLP
811 Main Street, Suite 4100
Houston, Texas 77002
(713) 632-8000

ATTORNEYS FOR DEFENDANT
THE METHODIST HOSPITAL

**CERTIFICATE OF SERVICE**

I certify that on May 17, 2024, a copy of the foregoing was served via email or ECF service to all parties who have entered an appearance in this lawsuit.

*/s/ R. Paul Yetter*
R. Paul Yetter