IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| EDWARD SWEAT, et al., individually and on behalf of a class of similarly situated individuals, | § | |
| Plaintiffs, | § | |
| v. | § | Civil Action No. 24-CV-775 |
| HOUSTON METHODIST HOSPITAL, | § | |
| Defendant. | § | Assigned to Hon. Lee H. Rosenthal |

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Defendant The Methodist Hospital d/b/a Houston Methodist Hospital files this reply in further support of its motion for summary judgment, which the Court should grant.

**SUMMARY OF ARGUMENT AND STATEMENT OF ISSUES**

Plaintiffs' response confirms there are no contested factual issues that preclude summary judgment. Lacking evidence that Houston Methodist had the required tortious or criminal intent, Plaintiffs resort to faulty inferences, circular reasoning, and statutory revisionism.

- The claim that Houston Methodist "knew" the Pixel was disclosing IIHI is based on flawed extrapolations from facts not in dispute. Plaintiffs' strained reasoning creates no actual dispute of fact as to intent.
- Lacking proof of actual knowledge, Plaintiffs try to diminish what a HIPAA criminal violation requires. But their arguments about Houston Methodist's commercial purpose or purportedly negligent conduct misconstrue the statute.
- Plaintiffs' interpretation of the Wiretap Act is simply wrong. Despite the rhetoric, Houston Methodist's commercial purpose for use of the Pixel does not satisfy the crime-tort exception.

As such, summary judgment is appropriate and warranted.[1]

[1] Plaintiffs abandon their unjust enrichment claim, Resp. at 2 n.1, and failed to respond to Houston Methodist's motion. This is waiver. *See, e.g.*, *Ramsey v. San Jacinto Coll. Dist.*, 2025 WL 1261027, at *10 (S.D. Tex. Apr. 30, 2025).

## STANDARD OF REVIEW

Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56. Although the Court construes "all facts and inferences in the light most favorable to the nonmoving party," summary judgment "may not be thwarted by conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence." *McFaul v. Valenzuela*, 684 F.3d 564, 571 (5th Cir. 2012) (cite omitted).

## ARGUMENT AND AUTHORITIES

### A. Plaintiffs cite no evidence that Houston Methodist knowingly violated HIPAA.

Lacking evidence to prove their allegations of Houston Methodist's knowledge, Plaintiffs resort to misinterpretations of facts not in dispute. The interpretations do not withstand scrutiny.

#### 1. Aggregate data does not prove knowledge of disclosure of identifiable data.

Plaintiffs say Houston Methodist "knew" the Pixel was disclosing individually identifiable health information (IIHI) since it got aggregate data that could only be created from individual interactions. Resp. at 10. This circular reasoning requires a significant leap unsupported by facts.

Per Plaintiffs, because aggregated data that Houston Methodist received was comprised of individual interactions, the hospital allegedly should have known that the aggregated data was created from individual interactions and that such individual interactions included individually identifiable health data. Resp. at 11 (Houston Methodist "turned a blind eye and never looked into how the aggregated data was created").

This conflates an individual or unique user interaction with an identifiable interaction. The terms are not synonymous, and HIPAA prohibits disclosure of individually *identifiable* health information. 42 U.S.C. § 1320d(6). Plaintiffs do not explain (nor can they) why the hospital should

have known that aggregated, anonymized data came from identifiable data. To the contrary, the Pixel's aggregated, anonymized output comported with the undisputed evidence that Houston Methodist believed the Pixel had an anonymized input. *See*, *e.g.*, J. Duncan Tr., MSJ Ex. 8, at 20:13-21:9 ("[I]t was, again, my understanding that none of that data actually was used for any purposes of individualizing anyone. All that data was hashed and anonymized.").[2]

Plaintiffs also say the hospital's privacy policy reveals it "knew" the Pixel "was sending Facebook data about specific unique individual users." Resp. at 6. They wrongly treat language about "unique" users as synonymous with "identifiable" users. And they take the language out of context. Plaintiffs quote from a section describing use of Facebook "Ad serving" on the Facebook platform, which is separate from a section describing Houston Methodist's use of web beacons/pixels on its own website. MSJ Ex. 15, at HM0000002-005. Their conspiracy theory that the hospital's disclaimer as to the Facebook platform indicates a deep, hidden understanding of the Pixel's operations on its website, much less an intent to transmit IIHI, is wholly unsupported by the record.

**2. Facebook's disclosure that the Pixel filtered out IIHI is no evidence that Houston Methodist knew the Pixel allegedly received such information.**

Plaintiffs contend that Facebook's public disclosure about its filter "actually informed" Houston Methodist that the Pixel sent "health-related data" to Facebook. Because the filter "prevent[ed] that data from being ingested into [Facebook's] ads ranking and optimization systems," Plaintiffs speculate that the hospital must have known such data was transmitted. Resp.

[2] Plaintiffs' "rebuttal" expert declaration, offering the legal conclusion that data transmissions contained IIHI under HIPAA, does not rebut, or even respond to, the Houston Methodist expert report. Resp. Ex. K (Ludgin Decl.). But more importantly, it is irrelevant to the question before the Court: whether Plaintiffs have shown a genuine dispute of material fact about Houston Methodist's intent to "fall[] within the statutory exemption from liability" under the Wiretap Act. Mem. Op., ECF 28 at 8.

at 11-12. But they offer no evidence that any Houston Methodist employee had this understanding. Their self-serving interpretation of the Facebook disclosure is no evidence of Houston Methodist's knowledge, particularly when contradicted by its actual communications and actions.

In fact, Fathom provided Houston Methodist the opposite interpretation: "Since health information is filtered out, and all data is hashed and randomized (meaning it can no longer be used to identify an individual,) Meta isn't collecting [personal health information]," and "data that is deemed sensitive health information is not collected." B. Cohen Email, MSJ Ex. 12, at HM00005368. And Houston Methodist never got notice that the filter detected sensitive health data, as Facebook promised would occur. Email from J. Effenson, MSJ Ex. 19, at HM00001196.

Plaintiffs attempt to impute knowledge on Houston Methodist based on their own interpretation of one excerpted sentence. They wholly ignore proof of Houston Methodist's efforts to obtain information about the filter once outreach from *The Markup* raised questions about its efficacy. They ignore proof that the hospital then removed the Pixel within weeks after not getting precise answers from Facebook about what was transmitted and filtered: "we didn't have the answers at this point that were being raised . . . . So we removed it, and then we investigated it." Mot. at 8-9; J. Kuczynski Tr., MSJ Ex. 4, at 17:13-22. Far from proving criminal intent, the record as a whole establishes Houston Methodist's lack of knowledge that the Pixel could receive IIHI and its consistent efforts to avoid any unauthorized disclosures.

**B. Lacking proof, Plaintiffs suggest a HIPAA standard untethered to the law.**

Unable to prove that Houston Methodist *knowingly* disclosed IIHI through the Pixel, Plaintiffs suggest a new standard for what HIPAA requires.

**1. A commercial purpose does not establish criminal liability.**

Plaintiffs first try to excise HIPAA's knowledge requirement altogether, arguing that Houston Methodist's commercial purpose for the Pixel suffices to establish criminal liability.

Resp. at 2 ("[I]t is a violation of HIPAA to disclose IIHI without authorization with 'intent to . . . use [it] for commercial advantage.'"). Not so.

HIPAA requires knowledge: a person "who *knowingly* . . . discloses individually identifiable health information to another person . . . shall be punished." 42 U.S.C. § 1320d-6(a). And it provides for enhanced penalties "if the offense" – a knowing disclosure of IIHI – "is committed with intent to sell, transfer, or use individually identifiable health information for commercial advantage." *Id.* § 1320d-6(b)(3).

Therefore, that Houston Methodist used the Pixel for a commercial purpose to secure digital ad analytics is hardly the end of the inquiry. Plaintiffs must show the hospital knowingly disclosed IIHI through its use of the Pixel. They come nowhere near making this showing.

**2. Negligence does not establish criminal liability.**

Plaintiffs claim, based on snippets from deposition transcripts, that Houston Methodist failed to take adequate precautions in implementing the Pixel. Resp. at 7-8. The facts are otherwise.

The hospital's former director of digital marketing testified that it audited new technology solutions for HIPAA compliance and specifically concluded the Pixel did not transmit personal health data. A. Milligan Tr., MSJ Ex. 9, at 23:25-24:14; 34:3-20. Other employees simply could not speak to audits that had occurred prior to, or outside the scope of, their work. *See* J. Effenson Tr., MSJ Ex. 6, at 43:18-44:8 ("I can't speak to my time before Houston Methodist," but "we always made sure of what we were doing and any tool we were using was within privacy boundaries"); J. Duncan Tr., Resp. Ex. G, at 29:8-25 (his role in 2017 did not involve audits of tracking tools).

Plaintiffs are "not entitled to ignore or mischaracterize the facts in evidence." *Wilson v. Baucom*, 2021 WL 7081073, at *1 (W.D. Tex. Sept. 15, 2021), *rec. adopted*, 2021 WL 6755199

(W.D. Tex. Oct. 5, 2021). Their unsubstantiated assertions about a lack of diligence should be rejected.

In any event, inadequate diligence would, at most, amount to negligence, which cannot satisfy HIPAA's *mens rea* requirement of knowing disclosure. Plaintiffs do not set out, much less satisfy, the standard for willful blindness: The defendant "must subjectively believe that there is a high probability that a fact exists and . . . must take deliberate actions to avoid learning of that fact." *Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 769 (2011).[3] "[W]illful blindness [has] an appropriate limited scope that necessarily surpasses recklessness and negligence." *Id.*

Plaintiffs point to no evidence that Houston Methodist "subjectively believed" the Pixel was disclosing IIHI or took "deliberate actions" to avoid so learning. To the contrary, its employees uniformly testified, without contradiction or impeachment, to believing that the Pixel was safe. Mot. at 13. This is dispositive. *See, e.g.*, *In re Pharmatrak, Inc. Priv. Litig.*, 292 F. Supp. 2d 263, 268 (D. Mass. 2003) (granting summary judgment on Wiretap Act claim where testimony showed no intent to collect personal data, and "Plaintiffs offer no evidence to contradict these statements").

It is no response to try to wish away this proof by suggesting credibility is a jury issue. Resp. at 18. Plaintiffs point to *no* circumstance or contradiction that casts doubt on the credibility of this testimony. Summary judgment "cannot be defeated solely by conclusional allegations that a witness lacks credibility." *Carlton v. Steele*, 278 F. App'x 352, 354 (5th Cir. 2008) (cite omitted).

---

[3] In the Fifth Circuit, "willful blindness" is often referred to as "deliberate ignorance." *United States v. Roussel*, 705 F.3d 184, 187 n.1 (5th Cir. 2013).

**C. Houston Methodist's commercial purpose is not within the Wiretap Act exception.**

Plaintiffs admit the crime-tort exception has two interpretations: the "independent purpose" standard and "primary motivation" standard. Resp. at 14, 17. But they wrongly claim that Houston Methodist's commercial purpose satisfies either standard.

*First*, Plaintiffs misapprehend the independent-purpose standard. It requires a criminal or tortious purpose *independent* of the act of interception. *See Caro v. Weintraub*, 618 F.3d 94, 100 (2d Cir. 2010). Here, the only alleged crime is the purported unauthorized disclosure of health information through use of the Pixel, which is the same conduct alleged to constitute an interception under the Wiretap Act. Plaintiffs conflate an independent criminal statute with an independent act. *See* Resp. at 15 (recycling arguments that are unavailing for the reasons stated above). But this is the precise argument that *Caro* rejects. 618 F.3d at 100.

Plaintiffs' assessment of the case law is likewise unpersuasive. They say courts "routinely" uphold similar claims for Wiretap Act violations. Resp. at 14. But these cases were resolved on the pleadings and did not address the impact of this point on HIPAA's enforcement scheme. Because conflating Wiretap Act and HIPAA violations would undermine HIPAA's enforcement scheme, this Court should follow those decisions that interpret the Wiretap Act to require a "criminal act that is independent from the act of recording." *Caro*, 618 F.3d at 100; *see also* Mot. at 18 (citing cases).

*Second*, Plaintiffs try to diminish what the primary-motivation standard requires: a criminal or tortious purpose as the "conscious objective" or "determinative factor" for the interception. *In re Pharmatrak, Inc.*, 329 F.3d 9, 23 (1st Cir. 2003); *In re DoubleClick Inc. Privacy Litig.*, 154 F. Supp. 2d 497, 514-15 (S.D.N.Y. 2001). Just as Plaintiffs treat commercial motivation as proof of criminal liability under HIPAA, they treat a commercial motivation as proof of a criminal purpose under the Wiretap Act. Resp. at 17. This argument is legally incorrect and factually unpersuasive.

The undisputed record shows that the hospital never acted with a conscious objective of violating HIPAA. The transmission of IIHI could not have been a determining factor in using the Pixel because the hospital did not believe such transmissions to be possible. To the contrary, it received anonymized, aggregate analytics consistent with the understanding that it could safely use the tool while complying with HIPAA. Plaintiffs offer no evidence suggesting that Houston Methodist – or the healthcare industry or advertising agencies that serve the industry or its government regulators – understood that the Pixel transmitted IIHI in violation of HIPAA. *See* Resp. at 4-6; *In re Pharmatrak*, 292 F. Supp. 2d at 267-68 (unintentional or negligent transmission of personal data is insufficient to satisfy the specific intent requirement under the Wiretap Act).

In fact, when doubts arose, Houston Methodist removed the Pixel to protect patient privacy. That is undisputed. The potential transmission of IIHI was a determinative factor in *removing* the Pixel, not using it. Houston Methodist's commercial purpose and good-faith efforts to comply with HIPAA foreclose liability under the Wiretap Act.

## **CONCLUSION**

The Court should grant summary judgment against all of Plaintiffs' surviving claims.

Dated: June 13, 2025

Respectfully submitted,

*/s/ R. Paul Yetter*
R. Paul Yetter
State Bar No. 22154200
pyetter@yettercoleman.com
Tracy N. LeRoy
State Bar No. 24062847
tleroy@yettercoleman.com
Mary E. Bracewell
State Bar No. 24139388
mbracewell@yettercoleman.com
YETTER COLEMAN LLP
811 Main Street, Suite 4100
Houston, Texas 77002
(713) 632-8000

ATTORNEYS FOR DEFENDANT
THE METHODIST HOSPITAL

**CERTIFICATE OF SERVICE**

I certify that on June 13, 2025, a copy of the foregoing was served via email or the Court's ECF service to all counsel of record.

*/s/ R. Paul Yetter*
R. Paul Yetter